THE PEOPLE, on the relation of John Coxe Morris, *vs.* ADAMS.

The determination of the electors of a town as to the *number of constables* to be chosen must be by a *formal vote* or *resolution.*

Where there is no limitation of the number by such formal resolution, and more than five persons are voted for, the five having the greatest number of votes are entitled to discharge the duties and receive the emoluments of the office.

QUO WARRANTO. This was an *information* in the nature of a *quo warranto,* filed by the attorney general against the defendant for claiming and exercising the office of constable in the town of Butternuts in Otsego. The defendant pleaded that at the annual town meeting held on the first Tuesday of March, 1831, he was duly elected to the office of constable, that he took the oath of office and gave security, &c. The attorney general replied, denying the election, &c. The cause was tried at the Otsego circuit in March, 1832, before the Hon. ROBERT MONELL, one of the circuit judges. The jury found a *special verdict,* from which it appears that at the annual town meeting of the town of Butternuts in March, 1831, no law, vote or resolution of the town was then or ever had been passed, limiting the number of constables in the town ; that the electors at the town meeting in 1831 voted for two sets of candidates for the several offices, and that the ballots of the respective parties had no more than four persons as constables thereon ; that four individuals voted for as constables on the ballots headed with the name of *John Coxe Morris* as supervisor, had a greater number of votes than four other individuals had, among whom was the defendant in this cause, and who were voted for as constables on ballots headed with the name of *Ansel C. Moore* as supervisor; that the presiding officers canvassed the votes, and made a statement of the result of the canvass, which was duly entered in the minutes of the proceedings of the meeting, and by which it was certified that the four individuals who were voted for as constables on the ballots headed with the name of John Coxe Morris as super-

visor, were elected constables for the town of Butternuts for the then next ensuing year; and that on the 7th March, 1831, the defendant took and subscribed the oath of office of a constable, and gave security, &c. By the verdict it further appears that at the annual town meeting in Butternuts in 1829, *three constables* were elected; that at the annual town meeting in 1830, on one set of ballots, *four persons* were voted for as constables, and on another set only *three persons* were voted for as constables; and that upon the canvass, the presiding officers inserted the names of *four persons* only, in the statement of the result, as having been elected constables, and that a few days afterwards the name of a *fifth person* (who had the next highest number of votes to the four whose names were entered as elected,) was inserted in the list of constables by the justices as having a *possible right* to the office, and principally because a constable was wanted for the accommodation of the inhabitants living in the south part of the town, and one of the constables elected had declined serving; and that at the annual town meeting in 1832, the electors determined by resolution that *five constables* should be chosen for the then ensuing year.

By the *Revised Statutes, vol.* 1, *p.* 340, § 3, it is provided that there shall be chosen at the annual town meeting in each town, one supervisor, one town clerk, not less than three nor more than five assessors, not more than five constables, &c.; and by the 5th section of the same act, it is declared that the electors of each town shall have power at their annual town meeting to determine *what number* of assessors, *constables* and pound-masters shall be chosen in such town for the then ensuing year.

*Greene C. Bronson,* (attorney general,) for the people.

*E. B. Morehouse,* for the defendant.

*By the Court,* SUTHERLAND, J. The facts found by the special verdict do not, in my opinion, show a sufficient determination of the electors of the town of Butternuts, previous to the year 1832, to limit the number of their constables to *four.*

The statute, when it says that the electors of each town shall have power, at their *annual town meeting*, to determine what number of constables shall be chosen in such town for the then ensuing year, means a determination by a formal vote or resolution of the electors, in the same manner that they express their will on other subjects. Indeed, their will can be legally expressed in no other form. The special verdict finds distinctly that eight individuals were voted for as constables, and that the defendant, Adams, was the fifth highest; and there having been no legal limitation of the number at the town meeting, I do not think we should be justified in indulging conjectures founded on collateral and perhaps accidental circumstances as to the actual intention of the electors.

The canvass, as first made and entered in the minutes, I do not think was conclusive upon the town or the parties interested in the question. It was not so considered in 1830; for then one set of ballots had four and another three names as constables. The presiding officers, in the first instance, inserted the names of four only in their certificate of the result. The name of the fifth, however, was afterwards returned, and he qualified and served.

The law in this case has pointed out the mode in which the number of constables may be limited. It is plain and simple; and if that mode is not pursued, and five (the greatest number allowed by law) are voted for, who are competent to serve, they are all, in my opinion, entitled to discharge the duties and receive the emoluments of the office.

The defendant is therefore entitled to judgment upon the verdict.