SAWYER & a. *v.* MANCHESTER & KEENE RAILROAD & *Tr.*

The record is the only competent evidence of a vote passed by a town, and is conclusive. It cannot be amended to the injury of one who, relying upon it in good faith, without notice of error, has acquired rights under it.

Under an article in the warrant for a town-meeting "to see what sum the town will vote to raise and appropriate as a gratuity to" a railroad, "said road to be completed on or before" a day named, the town may lawfully vote a gratuity upon condition that the road be completed in a reasonable time.

FOREIGN ATTACHMENT. The trustee is the town of Hancock. The plaintiffs claim to charge the trustee for the amount of five per cent. on the appraised valuation of the town for the year 1874. The warrant for a special meeting of the town, held January 25, 1875, contained the following article:

"Second. To see what per cent. of its last valuation, or what sum of money, the town will vote to raise and appropriate as a gratuity to the Manchester & Keene Railroad Company, if it will build a railroad with suitable depots at the village, or within one half mile of the town hall in said town, said road to be completed on or before the first day of January, 1878."

The vote of the town under this article was recorded by the town-clerk as follows:

"Voted on the second article of the warrant to raise five per cent. of the present valuation of said town of Hancock as a gratuity to the Manchester & Keene Railroad, if the company will build and complete a railroad into the village, or within one half mile of he town hall in said Hancock, with suitable depots for the convenience of its inhabitants and the public."

The directors of the railroad having received information of the vote as recorded, at a meeting holden December 14, 1875, "Voted to accept and approve the action of the treasurer of this company accepting the gratuity voted by the citizens of the town of Han-

cock to aid the construction of the Manchester & Keene Railroad."

At the September term; 1878, nearly a year after this suit was commenced, upon the application of the trustee and after a full hearing of the parties, the court ordered that the record of the vote be amended by adding thereto the words "and complete the road on or before the first day of January, 1878;" and to this order the plaintiffs excepted.

The road was not completed by January 1, 1878, but was completed and opened for public travel August 14, 1878.

At the March adjourned term, 1879, an opinion in favor of the plaintiffs was announced. The trustee moved for a rehearing, upon the ground that the amendment of the record was properly allowed, and that the vote as recorded could not lawfully be taken under the article in the warrant.

*G. Y. Sawyer & Sawyer, Jr.*, for the plaintiffs. We had supposed it could not be denied that the record of the vote as originally made is a town record. It was entered on the town book of records by the only person authorized to record town votes, and certified by him to be a vote of the town. Such town vote must be recorded by some person acting for and in behalf of the town in making its record. The town cannot act for itself in that behalf as a natural person. It must act by an agent; and the town-clerk is its agent by law for that purpose. It is true, he is also a public officer, and as such is required to perform duties to the public in the discharge of his agency for the town, and sound principles may forbid that on that account he should stand in the full relation of agent to his principal, as in ordinary cases of principal and agent. It is not claimed that he comes within Bouvier's definition of agent, nor is it claimed that the town, as principal, can be made liable for the acts of the clerk as agent, as in the case of one authorized to act for a natural person, within the meaning of that definition. But it is claimed that the records made by him of the town's doings are town records, binding upon the town, precisely as the records of corporate doings made by a clerk of a railroad, or other private corporation, are its records binding upon it as a corporation.

May not such a corporation be estopped to deny its record made by its clerk, however false?—and why not a town? The argument is, that a town is not to be so estopped because its record is not made by one technically its agent, but by a public officer. But *quoad hoc*, the making up of the town records, the clerk is its only agent, though all the doctrines applicable to the case of principal and agent may not follow, because in exercising his agency he performs duties as public officer also. The entire argument in support of the motion for a rehearing is based upon the theory that the town has made no record, and therefore cannot be estopped to deny its record. No state of facts can ever arise upon that

view which will estop a town from denying its record, for it can never have a record if this is not one. The fallacy lies in assuming that because the record is made by the town-clerk—a public officer, who is held not to sustain the relation of agent to the town as his principal, in the ordinary meaning of principal and agent— therefore the record is not one of the town, but of the town-clerk. We submit that though made by the town-clerk, it is made by him for and in behalf of the town, and, so made, is the town record.

The position taken in the trustee's brief, that the case does not find that the railroad corporation constructed its road in ignorance of the limitation as to time, assumes that the plaintiffs are to prove the negative proposition, to wit, that the railroad corporation did not know of the limitation in the vote as to time. If the corporation did in fact know of the passage of the vote, with the limitation as to time included, that affirmative proposition that the railroad corporation did know of the limitation in the vote as passed was open to proof by the trustee, and would form a perfect answer to the position that the town should be estopped to deny the vote as originally recorded. The case finds that the corporation knew of the vote as recorded. If they knew that the vote as passed included more, that was for the trustee to prove, not for the plaintiffs to disprove.

The provisions of the statute as to what shall be set forth in an article in the warrant for a town-meeting, are merely that the "subject-matter of the business" shall be stated, and that, on the written application of a certain number or proportion of the voters, "any subject" specified in the application shall be inserted. G. L., c. 38, ss. 2, 3. The "subject" thus being brought to the notice of the voters, we submit that they are at liberty to act upon the matter at their pleasure within the limit of the town's authority. If they are to be restricted to the precise terms of the article, then it is in the power of the selectmen by their wording of the article to limit the action of the town, and deprive the voters of all opportunity to exercise their discretion and judgment upon the matter.

The statute empowered the town "to raise and appropriate money to aid in the construction of any railroad in this state, in such manner as the town should deem proper." What is there in the law to forbid that when the subject of aiding in the construction of a railroad is brought before the town, whatever conditions may be specified in the article, they may be disregarded, new conditions adopted, or the aid voted unconditionally. The authority to render such aid is not limited to a road to be constructed in the town, or to it, nor to one that must be completed. If the town deem proper, they may vote to raise and pay over the money to any railroad, whenever located "in the state," and without waiting to see whether any other funds are secured for its construction.

*C. R. Morrison* (with whom were *Stevens & Parker* and *A. W. Sawyer*), for the trustee. I. Is the trustee estopped to deny that the vote was as first recorded?

(*a*) The case does not show that the railroad corporation constructed its road in ignorance of the limitation as to time. The facts stated in the case may be evidence from which a jury may find that the corporation was misled, but they are not in themselves such a finding.

(*b*) Nor does the case show that "other parties" furnished aid on the faith of a different vote from that which was actually passed.

(*c*) The case does not show that the town furnished any information, either true or false, to the railroad corporation. If the record of the vote was information, the town did not make the record.

(*d*) The town, in passing a vote upon the subject, may be considered as consenting that it be recorded, since the law makes it the duty of the clerk to record all votes of the town. Upon what principle can it be held to have consented to his making a false record?

(*e*) His tenure of office was derived from the statute, and the town had no power to remove him. His duties were prescribed by statute, and the town had no control over him. Severe penalties were imposed upon him for negligent or fraudulent conduct, but no penalties upon the town in respect to him or his duties. The statute made it his duty to make a true record of the vote; it did not make it the duty of the town to make a true record of the vote, nor to see that a true record of it was made. The town had no officers whose province it was to supervise the work of the town-clerk, and its inhabitants were not required to leave their business to watch over him. The town having, in obedience to the law, furnished an officer whose business it was, as required by law, to make a true record of all votes passed at any legal town-meeting, discharged its whole duty. It was the railroad which was asking a favor, and it was quite as much its business as the town's to know that whatever vote was passed was correctly entered upon the records. The town would acquire no property or interest in the railroad. Its inhabitants would derive no benefit from the railroad except in common with the public at large. And there is no reason or principle of justice or public policy upon which the town can be held to sustain any different relation to the recording officer in respect to this vote, than in respect to a vote to raise money for any of the purposes required or allowed by statute. If the town should direct him to record a particular vote, it would add nothing to his authority; and if it should forbid him to record it, the law would compel him to do it notwithstanding. What sort of an agent is one whom a town is compelled to appoint, cannot remove, and over whom it has no control?

The authorities are numerous and uniform that hold that a town or other municipal corporation is not responsible for the negligence of officers of this description unless made liable by statute. The

town can no more be estopped, by the act of its town-clerk, to stand upon the record as amended, than it could be sued directly for his negligence.

(*f*) This matter of estoppel was necessarily involved in the order granting the amendment, and is now *res adjudicata*. "Where the justice of the case requires it, amendments may be made saving the rights of third persons acquired prior to the making of the amendment." There was no exception to the order, or, if any, it was not followed up if it could have been, and the amendment was " actually extended upon the records of the town."

(*g*) The amendment should also be granted because the town, under the article, had no authority to grant aid except upon the conditions named, and because the vote as first recorded implies such conditions, and because there was in the record, as first made, enough to put upon inquiry as to the vote actually passed. The article in the warrant was, " To see what per cent. of its last valuation, or what sum of money, the town will vote to raise and appropriate as a gratuity to the Manchester & Keene Railroad Company, if it will build a railroad with suitable depots at the village, or within one half mile of the town hall in said town, said road to be completed on or before the first day of January, 1878." The plaintiffs' counsel claim that the town was at liberty to dispense with any of the conditions. If their position is tenable, the town under this article could have voted the gratuity, although the road should never be completed, or, if completed, should not come within ten miles of the town of Hancock.

The town could not be called upon to vote the money except upon the conditions named, and any one who was willing that it should be granted upon those conditions, would be safe in staying away. It was not to see what the town would give generally, but what the town would give on certain conditions. The town could not add to these conditions, and they could not pass effectively any vote that did not include them, either expressly or by implication. To do so would be to change the character of the article. The opinion virtually concedes that such is the meaning of the article, in saying that " the amendment cures the variance between the article in the warrant, and the vote passed under it." Are the plaintiffs to take the benefit of the amendment, and not be bound by it? The record is amended, or it is not. If it is not amended, and the vote as recorded is to be construed without limitation as to time, the town had no authority to pass the vote. If the record is amended, the condition was not complied with.

And as to the true construction of the vote as first recorded, let it be tried by the same test as the vote of the directors. That vote was merely "to accept and approve the action of the treasurer in accepting the gratuity voted by the citizens of the town of Hancock to aid in the construction of the Manchester & Keene Railroad." The vote of the directors was to accept the gratuity. Did

they accept the gratuity with the conditions attached to it? If, by voting to accept the gratuity, they voted to take it with the ·conditions attached to it in the vote granting it, upon what reasoning is it to be denied that the vote granting the gratuity was a vote granting it with the conditions stated in the article under which the vote was passed? If the conditions are to be implied in 'the one case, why not in the other?

And then as to notice. By the article the town was to be called upon to vote in respect to a gratuity, in case the road should be built to a certain place by a certain time. ·For aught that appears, it was proved to the satisfaction of the judge granting the amendment that the company did know all about the vote at the time it was passed. The case shows nothing to the contrary. And aside from direct notice in this or similar ways, no person of ordinary intelligence, even with nothing before him but the vote as first recorded, and the article in the warrant upon which it was based, should be permitted to say that he was not put upon inquiry as to what action the town took in respect to the limitation of time. The record actually made was sufficient to amend by. And in such a case the rule is, that amendments are to be made as against all parties. *Whittier* v. *Varney*, 10 N. H. 304; *Cass* v. *Bellows*, 31 N. H. 509, 510; *Bean* v. *Thompson*, 19 N. H. 294; *Baker* v. *Davis*, 22 N. H. 17.

(*h*) The amendment having been made, what is its effect? It was expressly decided in *Whittier* v. *Varney* that an amendment to a levy or return "relates back to the time of the levy or return;" and the same must be true of all amendments. The plaintiffs are endeavoring to try the merits of the order after it has become *res adjudicata*. The amendment relates back, the vote is to be read, and the rights of the parties to this suit determined, as if the record of the vote had always been what it now is. Whether such a result ought to follow was one of the questions passed upon by the court in granting the order, and is not now open to revision. *Bassett* v. *Salisbury M'f'g Co.*, 28 N. H. 452; *Avery* v. *Bowman*, 39 N. H. 395; *Russell* v. *Dyer*, 39 N. H. 528; *Whittier* v. *Varney*, *Cass* v. *Bellows*, *Bean* v. *Thompson*, and *Baker* v. *Davis*, *supra*. The order was made against these plaintiffs, and without qualification, and they cannot go back of it to show any other or different vote.

II. The vote of the town was not an offer, no agent or officer having been appointed to communicate it as an offer to the company. If the mere passing of the vote was not an offer and a communication of the offer, its being recorded by the clerk as a part of his general official duties added nothing. Nor does the fact that the company by some means received information of the vote as it was recorded, make the vote a communicated offer to the company. It is immaterial in what way they got this information, if it was not from some agent authorized by the town to act in its

behalf. No such agent having been appointed, the vote was sim-
ply the possible initiative of a contract that was never entered into.

The case fails to show an acceptance, even if an offer could be
regarded as having been made. The only evidence (beyond the
building of the road) of an acceptance, is the vote of the directors,
nine months after the action of the town, "to accept and approve
the action of the treasurer of this company in accepting the gratu-
ity voted by the citizens of the town of Hancock to aid the con-
struction of the Manchester & Keene Railroad." What was the
action of their treasurer? when was it taken? with whom was it
had? The case affords no answer to either of these questions. This
vote of the directors does not appear to have been communicated
in any way to the town, or to any agent or officer of the town. The
court are left in the dark as to what the treasurer did, or with
whom he communicated. In short, the case does not show that
the company became bound to build a road according to the vote
of the town, whether that vote was as first recorded, or as shown
by the amended record. There is nothing to show that the com-
pany could not have built their road elsewhere, or not at all, with-
out incurring any liability to the town. The company could not
neglect to become obligated to the town during the whole period
of the construction of the road, and then claim the "gratuity"
merely because it had constructed the road. And the question is,
not whether the company is estopped to deny an acceptance, but is
the town estopped to deny that any acceptance was communicated
to the town?

*Chase & Streeter* (with whom was *C. H. Burns*), for the plain-
tiffs. I. If the vote of the town, as originally recorded by the
town-clerk, was communicated to the Manchester & Keene Railroad
Corporation as the town's action upon that subject-matter, and said
corporation, believing that such vote truly represented the action
of the town and having no reason to believe otherwise, relied upon
it in expending their money and time, building their railroad, the
town, so far as said corporation is concerned, is bound by the vote
as thus recorded, and cannot change it even though it does not
truly state the action of the town;—and for the following reasons:

1. Because it is a maxim of natural justice, and therefore of
law, that where one of two innocent parties must suffer by the
wrong of a third, he shall suffer who has empowered such third
party to do the injury. Sto. Ag., s. 127, and authorities cited;
*Nixon* v. *Brown*, 57 N. H. 39.

The town selected the town-clerk who made the record under
consideration; the railroad corporation had no voice in making the
selection. It was the duty of the town to select a town-clerk;
more than that, it was its duty to select such an one as would per-
form the duties of the office properly—not fraudulently or negli-
gently.

It was the duty of the railroad corporation, in contracting with the town, to ascertain whether the town had passed a vote sufficient to authorize the contract; and the proper place for them to get information upon this subject was the record of the town's doings made by its clerk. Such record, if in existence, would be the only legal evidence of the town's action. So the railroad corporation cannot be regarded as guilty of any wrong or want of care in looking to, and relying upon, the town-clerk's record for the required authority in the premises. If it can be said that the town is innocent of making the erroneous record, it certainly cannot be said that the town is innocent of placing the negligent town-clerk in office. The town empowered the clerk to make the erroneous record that has caused the mischief, by electing him to office. Natural justice requires that they shall be the sufferers, rather than the other party who took no part in making the record or selecting the officer who made it, and whose duty it was to look to and rely upon it.

2. Because the town-clerk, in making said record, was agent of the town, and therefore said record was the town's record; and the defendant corporation having relied upon it, and changed its position by expending its money in building a railroad, the town is estopped from denying its truth. The only legal element in this proposition that is controverted, as we understand it, is that relating to agency, and to that we address ourselves.

A town is a corporation aggregate, possessing a two-fold nature— the one public, and the other private. So far as certain of its duties and acts are concerned they are wholly public, and the town in the performance of them is but a subdivision or fractional part of the whole sovereignty or state, and acts as its deputy or agent. In order that it may accomplish the ends desired, it is necessary that it should have power to make contracts (not generally, to be sure, but within certain definite limits) the same as corporations of a wholly private nature, and in this respect it is governed by the same rules as purely private corporations are governed by. To illustrate: In raising money to pay state and county taxes, to defray its own charges, in building and keeping in repair highways, in educating the youth, and in many other respects, it acts in its public character, as an instrument or agent of the state. But in the performace of some of these and its other duties, it becomes necessary for it to make contracts, such as contracts for building highways, contracts for raising money to pay its debts, &c., and this calls into play that part of its nature which is like that of private corporations or individuals.

As the corporation has a two-fold nature, so do its officers. The selectmen, in the performance of some of their duties, cannot be regarded as agents of the town, but only as public officers upon whom certain duties are placed by statute,—as, for instance, in the drawing of jurors, assessing state and county taxes, &c. In the performance of other duties they act as agents of the town, and as

such can bind the town in accordance with the law of agency, as in buying lumber to repair bridges, contracting for the support of paupers, paying the town's debts, &c. The surveyor of highways, in making repairs upon highways, acts as a public officer, and not as an agent of the town (*Ball* v. *Winchester*, 32 N. H. 435); but he may purchase materials for making such repairs, as agent of the town, and so bind the town by his contracts. *Brown* v. *Rundlett*, 15 N. H. 360. The office of town-clerk also possesses this double nature. Some of the duties required of the town-clerk are clearly of a public nature, and in the performance of them he acts as a public officer, while others relate to the private (so to speak) capacity of the corporation, and in doing those he acts as the agent of the town. The duties of the town-clerk in checking the names of voters upon the check-list, and recording votes for state and county officers at town-meetings, and pertaining to the drawing of jurors, are examples of the former, while his duty to record votes of the town, passed in what we have termed its private capacity, is an example of the latter. In the latter instance his hand is the hand of the corporation which makes a record of its action for the benefit of the corporation and those who deal with it; while in the former instances his record is not for the benefit of the corporation, but of the public. He is an officer of the town upon whom certain public duties are imposed, in addition to those which he is required to perform for the corporation in its private capacity. By reason of the nature of the corporation and the office, the statute provides how he shall be chosen and the duration of his term of office. But the statutes regarding the choice, term of office, and duties of town-clerks, so far as those duties pertain to the private character of town corporations, do not differ essentially from the statute provisions relating to corporations of a purely private character. Compare *ss.* 1, 14, *c.* 40, *s.* 2, *c.* 41, and *ss.* 1, 6, *c.* 42, Gen. Laws, with *ss.* 8, 9, *c.* 147, Gen. Laws. Will it be contended that the clerk of a manufacturing corporation, for instance, is not the agent of the corporation in recording the doings of its stockholders and directors? Is there not the same reason for holding town-clerks to be such agents in recording the private acts of towns? In such cases the town-clerk "acts for and in behalf of the town," just as much as the corporation clerk acts for and in behalf of the corporation in the performance of his duties.

Our opponents say that the statute does not make it the duty of the town to make a true record of its doings, nor its duty to see that a true record is made. The same may be said as to private corporations. It is true that the statute does not so say, in so many words, but its provisions amount to that requirement as to both kinds of corporations. It requires them to elect clerks, who shall be sworn to the faithful performance of their duties, among which is the making of records of the doings of the corporations—thus indirectly requiring the corporations to keep true records of their

doings. In short, our opponents assume that all the acts of a town-clerk are of a public nature, and entirely ignore the fact that, in respect to those acts of a town which are similar in kind to those of private corporations, he acts for the town the same as clerks of private corporations act for them. When this distinction is made, the difficulty in this case vanishes; for the town, in passing the vote in question was acting in its private capacity—was taking a step towards entering into a contract with the Manchester & Keene Railroad and its friends.

Our opponents say "it is true that his [town-clerk's] record, until amended, was the only evidence of the vote that could be received, just as the return of a sheriff, although erroneous, is conclusive." If their argument be true—if the town-clerk's record is nothing but the act of a public officer for which the town is not responsible—how, we ask, can it be evidence for or against the town in any case based upon a contract? If the town-clerk does not make a true record of births, marriages, and deaths, as required by s. 5, c. 182, Gen. Laws, his town, as a corporation, is not injured thereby, because in the performance of that duty he is not acting for it, but for the public. But when he makes a record pertaining to the contracts of the town as a corporation, such record is evidence for or against the town, because his record is the town's record; his act is theirs; the admission, if any, contained in it is the admission of the town. 1 Dill. Mun. Cor., s. 241, *et seq.*

3. "A town is not concluded or bound by an erroneous record, whether made by design or accident, unless when it would, on general principles, be estopped." 1 Dill. Mun. Cor., s. 232.

II. As before suggested, the record of the vote is what the railroad corporation should have looked to, and relied upon, as the action of the town. In the absence of any other evidence, the presumption is that they did so. The case shows that they built their railroad as required by the vote. No question as to the correctness of the vote arose until after the road was completed, nor until after this suit was commenced. If there had been anything outside of the record tending to show that the railroad corporation had notice of the real action of the town, and of the erroneous nature of the record, or of facts that would put it upon inquiry regarding that matter, it is fair to assume that the town's counsel would have brought those facts out at the hearing, and had them stated in the case. But nothing of this kind appears. The town, through its counsel, now says, however, that the article in the warrant in connection with the vote showed that there was a limitation of time, or that it was sufficient to put the defendant corporation upon inquiry as to such a limitation. We suggest, on the contrary, that the article and vote taken together would satisfy almost any inquiring mind that the town in its action expressly rejected the limitation. The article brought that subject directly

before the town. Its records show that, in its action, it omitted the limitation. The corporation certainly were justified in assuming the record to be correct. The case shows that it built the railroad, but not before the first of January, 1878. If it had not relied upon the record as being correct, is it probable that it would have hazarded its large claim against the town by omitting to build the road seasonably? We contend that sufficient facts appear in the case to justify the application of the doctrine of estoppel to the town, as against the railroad corporation.

III. The vote of the town, as recorded, was a standing offer to the railroad corporation to raise and pay, as a gratuity, five per cent. of the valuation of the town, if said corporation would "build and complete a railroad into the village, or within one half mile of the town hall, with suitable depots," &c. So far as appears, or is suggested, the town has never withdrawn or modified this offer. It was an offer the town had power to make and be legally bound by. Gen. St., *c.* 34, *ss.* 16, 17. This offer came to the knowledge of the railroad corporation in some way, it matters not in what way; its treasurer accepted it; and its directors, on December 14, 1875, "voted to accept and approve the action of the treasurer" in accepting it. Whether this vote was communicated to the town it matters not, if the railroad corporation, within a reasonable time after the passage of the town's vote, built a railroad in accordance with the requirements of that vote. That it did build such a railroad is found by the case. Its vote and its subsequent action relating to the gratuity show that its action in the premises was induced by the gratuity. From these facts we contend that a valid contract arose between the parties, if not express, by implication, which was wholly executed on the part of the railroad corporation, and by virtue of which the town was legally bound to pay in accordance with their offer. Suppose the town, under a proper article in the warrant for the purpose, had voted that it would pay B a certain sum if he would build a town-house for the town, of a specified kind, upon a certain lot, and that no agent was appointed by the town to communicate or act with B, but that the only knowledge he got in regard to the matter was from the recorded vote of the town, and he, within a reasonable time, and before any recision or modification of the vote, built a house in accordance with the vote, would any one contend that he could not recover of the town the sum offered him in the vote? We think not. A like contract arose between the parties in this case.

*C. R. Morrison* (with whom were *Stevens & Parker* and *A. W. Sawyer*), in reply. I. It is conceded that upon the vote actually passed, the town is not chargeable. If it is charged at all, it is upon a false record of the vote passed. The question is, whether the inhabitants are to be taxed upon a false assumption.

II. There is absolutely no conflict of decision or authority to this extent. Records of municipal corporations may be amended to conform to the truth, provided the amendment be made by the same clerk, while in office, either during his term or after reëlection, and by order of the court upon due notice, and against a party chargeable with notice of the true vote. (Citing numerous cases.)

The granting of amendments of town records, as against all persons chargeable with notice, is but one application of the general principle that a party put on inquiry is bound to inquire, and if he neglect to do it he is chargeable with notice of what he might have learned upon examination. Digest, *p.* 261, *s.* 260, *p.* 496, *s.* 4, *p.* 130, *s.* 17, *p.* 261, *ss.* 252–255; *Carlton* v. *Bailey*, 27 N. H. 235; Sto. Ag. 92, *s.* 72; *Richards* v. *Columbia*, 55 N. H. 96, 100; *Backman* v. *Charlestown*, 42 N. H. 125; *Rich* v. *Errol*, 51 N. H. 350, 359.

Upon the foregoing principles and authorities, it would seem to be entirely immaterial whether the town, in voting the gratuity, be treated as acting in its governmental or in its private capacity, or whether the town-clerk, in making the record of the vote, be regarded as the agent of the town or as a public officer, for in either event the town had a right to have an amendment according to the fact as against a party chargeable with notice of the true vote. The holding that the amendment was properly made, carried to its logical conclusion, necessarily discharges the trustee. An amendment to a judgment and execution has relation back to the time when the execution was issued, and it is considered as issued in the form in which it stands when amended. *Giles* v. *Pratt*, 1 Hill, S. C., 239; 26 Am. Rep. 170–173, S. P.; *Rose* v. *Railroad*, 47 Iowa 420.

In like manner the record of our vote, when amended, relates back, and it is considered as having been made at the outset in the form in which it stands as amended. What, then, is there left for this court? The authority of the court below to make the amendment, in the form in which it was made, is too well settled to be questioned, and when made it relates back. True, amendments will not be allowed if injustice will thereby be done (*Wendell* v. *Mugridge*, 19 N. H. 113, *Baker* v. *Davis*, 22 N. H. 27, 33–35, *Smith* v. *Moore*, 17 N. H. 384); but this was one of the matters necessarily passed upon in granting the amendment. The granting of the amendment was a finding that injustice will not be done. In what way is this court to reach the question of injustice? It was not reserved for the full bench. The order granting the amendment, if treated as excepted to, and the exception as seasonably followed up, reserves no question of discretion, and all matters of fact and of discretion are concluded by the finding. *Bassett* v. *Company*, 28 N. H. 452; *Avery* v. *Bowman*, 39 N. H. 395; *Perley* v. *Brown*, 12 N. H. 493; *Farr* v. *Wheeler*, 20 N. H. 569; *Piper* v. *Hilliard*,

58 N. H. 198; *Taft* v. *Company*, 56 N. H. 414, 418; *Barker* v. *Savage*, 58 N. H. 252; *Daniels* v. *Lebanon*, 58 N. H. 284.

If it was objected that injustice would be done, the court found that injustice would not be done, and did not reserve the question. If no such objection was interposed, it cannot be urged here, and either way there is no legal exception to the order. There is no report of the evidence. It cannot be assumed that there were no facts to put the corporation upon inquiry, beyond what appeared by the records and files of the town-clerk. It is extremely improbable that there were not officers or agents of the corporation present at the town-meeting at the time the vote was passed. The directors may have learned of the vote " as it was recorded," and yet have known of the vote as passed, and have trusted to the omission of the clerk, and stand upon his record. Such conduct on their part would be no more extraordinary than what has been done in hundreds of instances in the management of railroad corporations.

III. But grant, for the sake of the argument, that these questions are here and all the evidence relating to them, and that there was no evidence beyond the records and files of the town-clerk: what then? Was the railroad chargeable with notice of the true vote? In the first place, it must be taken to have known what the article was. The article was,—"Art. 2. To see what per cent. of its last valuation, or what sum of money, the town will vote to raise and appropriate as a gratuity to the Manchester & Keene Railroad Co., if it will build a railroad with suitable depots at the village, or within one half mile of the town hall in said town, said road to be completed on or before the first day of January, 1878;" and the vote recorded was as follows: " Voted, on the second article in the warrant, to raise five per cent. of the present valuation of said town of Hancock as a gratuity to the Manchester & Keene Railroad, if the company will build and complete a railroad into the village, or within one half mile of the town hall in said Hancock, with suitable depots for the convenience of its inhabitants and the public, which vote was as follows: the number voting in the affirmative was 59; the number voting in the negative was 11." This record is to be construed, and whoever examined it was bound to construe it, in connection with the article. *Kinsley* v. *Norris*, 60 N. H. 131.

The vote to give a gratuity must be construed to be a vote giving it upon the conditions specified in the article. The article was not to see what the town would give generally to that corporation, but what it would give on certain conditions. The town could not pass any vote that did not include them, either expressly or by implication, for to do it would be to act upon matters not " distinctly stated in the warrant." The vote as first recorded implies the limitation of time, and if it does not it was not warranted by the article. But treating it only as evidence, putting the corporation upon inquiry, the

judge at the trial term was well warranted in regarding it as sufficient for that purpose. It was so extremely improbable that the town should not, under such an article, expressly naming time, take some action in regard to it, that no man with common intelligence, seeing the record and the article, should have failed to inquire. The most natural thing in the world would be to say, What about the time? Are we to have as much time as we choose? Of course it is the time stated in the warrant. If the officers of the corporation had asked such questions of the town-clerk, or of any intelligent inhabitant, they would certainly have known the truth. If they did not inquire, it was gross carelessness. If they did not inquire, it was because they did not wish to inquire, lest they should learn something they did not want to know.

IV. It is therefore immaterial, whether the town-clerk be regarded as officer or agent, or the town as acting in its governmental or private capacity, whether any amendment was necessary, or, if necessary, could be made against one not chargeable with notice. To any and all attempts to estop the town from showing the truth, it is a conclusive answer that the record as amended expresses no more than must be implied in the original record in connection with the article, or if it does, that the corporation was chargeable with notice; and finally, that the amendment has been granted upon notice and hearing, and no discretion reserved. To reach other questions, we must reason, not upon the case before the court, but upon a hypothetical case.

V. Of direct authority. *Chamberlain* v. *Dover*, 13 Me. 466, expressly holds that when a town-clerk makes an erroneous record, the town is not bound by it merely because others have confided in its correctness. Judge *Dillon* says the town is not concluded unless when it would on general principles be estopped. There is no intimation that the town is estopped merely because others have trusted to the record. The implication is the other way. The position taken by the dissenting judges in *Company* v. *Pomfret*, 20 Conn. 590, was, not that the town was estopped if the record had been acted upon, but that the town-clerk, under the circumstances, could not amend in the manner he did. They contended, as stated by Judge *Dillon*, that there should have been an application to the proper court " to correct the mistake in the record, if one existed, and thus give the opposite interested party an opportunity to show that the record was already right: " not to show that it had been acted upon, and therefore the town estopped, but to show that the record was already right.

It is no objection to an amendment of a clerk's record that the effect of it will be to displace one who has gone into the possession of an office under the original record. *Farrell* v. *King*, 41 Conn. 448; *Ellis* v. *Commissioners*, 2 Gray 370; *Roberts* v. *Rives*, 27 Ill. 242. No decision is produced which goes to the extent of holding the town estopped from having the record put right, merely

because it has been trusted to and acted upon. The decisions holding municipal corporations upon bonds rest upon the character of such contracts. They are commercial securities, and the municipality is presumed to consent that they be governed by the law relating to such securities, by which a *bona fide* holder, for value, gets a good title. The latest decisions by the supreme court of the United States rather restrict than enlarge the liability upon such securities. *Coloma* v. *Eaves*, 92 U. S. 484, 487; *Orleans* v. *Platt*, 99 U. S. 676; *Walnut* v. *Wade*, 103 U. S. 683, 695; *Buchanan* v. *Litchfield*, 102 U. S. 278, 293; *Marcy* v. *Oswego*, 92 U. S. 639; 1 Dill. Mun. Cor., *s*. 519.·

The issue before the court here is between the original parties, or between the town and one who stands on no better footing than the corporation.

A town has no private character or capacity. Whatever it owns or holds, it owns and holds in its governmental capacity, and not otherwise. In respect to all its property and rights of property, it is a public corporation, and not a private corporation. A private corporation may disband, and divide the property among its stockholders. Can towns do this? True, they had this power of distribution over the surplus revenue, but only by force of express statute. Act of July 2, 1841; *Wendell* v. *Pierce*, 13 N. H. 505. The only ground upon which the constitutionality of municipal aid has been upheld is, that the municipality, in granting it, is acting in its governmental capacity. 1 Dill. Mun. Cor., *s*. 158. If the town was not voting in its governmental character, the vote was void; and if it was, it was, as Judge *Dillon* forcibly says, going "quite to the verge of legislative authority." Since the town acquired no property, either public or private, by the vote, it does not come within a class of cases holding municipal corporations liable for negligence, in respect to property held as a source of revenue. Nor, since the fault of the clerk was but an omission of duty, does the town come within that class holding a public corporation liable, under certain circumstances, for wrongful acts, causing a direct injury to the property of another. Nor, since the town in voting was not acting under any charter or special authority, but only under a general law applicable to all towns and cities alike, does the town come within that class of decisions holding a municipality, acting under a charter, liable for defective streets, sewers, etc., where the duty, though of a public nature and for the public benefit, may fairly be inferred to have been enjoined upon the corporation, and accepted by it, in consideration of privileges granted.

A mortgagee who should cause his mortgage to be discharged upon the record, could not enforce it against a purchaser who has trusted to such a discharge, even if the supposed payment turned out to be nugatory; but otherwise, if the register of deeds, by his mistake, should enter such a discharge when none had been

sent him. *Durgin* v. *Mitchell*, 50 N. H. 586; *Stowe* v. *Meserve*, 13 N. H. 52; *Odiorne* v. *Mason*, 9 N. H. 24; *Montgomery* v. *Dorion*, 6 N. H. 250; *Chase* v. *Bennett*, 58 N. H. 428. There seems to be some difference in the statutes of different states, but a stronger case of protection to the grantee against the blunders of the recording officer may not be found than the decision of our own court in *Durgin* v. *Mitchell*, *supra*. The counsel claims that a private corporation would be estopped. No private corporation becomes such against its will. And, taking all of our statute provisions together, it will be seen that it is competent for a private corporation, in conformity with its charter and by-laws, to make its clerk removable at any time. Knowledge and acquiescence in an erroneous record might well be presumed against a private corporation, with a whole board of directors and frequent meetings, when any such presumption against towns would be most unreasonable. In the absence of something to call the attention of the town as such to an erroneous record, there can be no presumption of knowledge. And there is no duty resting upon it to institute any inquiry upon the subject, unless there is something to call its attention to it. And this is an answer to any suggestion that it was the duty of the town, passing such a vote, to see that it was correctly recorded. When the railroad, of its own motion, goes to the town-clerk, it cannot throw the risk of his having failed to make a correct record upon the town. If it may presume that the clerk has made a true record, the town can be in no fault for entertaining a similar presumption, there being nothing to call attention to the error in the ordinary course of proceedings.

The rule, that where one of two innocent parties must suffer, he who gives the confidence, not he who believes the false affirmation, must suffer, has no application to a compulsory election or appointment. Who would think of holding the governor and council answerable in damages for the misconduct of those whom they commission? The town elected in obedience to positive law, just as much as an appointment is made in obedience to positive law; and the maxim referred to is no more applicable in the one case than in the other. In the absence of an express statute provision to that effect, a city is not answerable for those whom it is compelled to employ. *Mayor* v. *Furze*, 3 Hill, N. Y., 612; *Bailey* v. *Mayor*, 3 Hill, N. Y., 531–538, and cases cited. It may be conceded that, where a statute, in terms, makes a particular officer an agent of the town or city, it imports by the use of that word such a liability as results from the general law of agency, and makes his acts, within the scope of his authority, binding upon the town. *Backman* v. *Charlestown*, 42 N. H. 125, 132. Yet, even selectmen have no general authority to bind the town. *Rich* v. *Errol*, 51 N. H. 350; *Canaan* v. *Durush*, 47 N. H. 212; *McIntire* v. *Pembroke*, 53 N. H. 462. "Their authority being limited and special, and

a creature of the statute, it is plainly the duty of all persons dealing with the selectmen in that capacity to take notice of the extent and limits of their authority." *Richards* v. *Columbia*, 55 N. H. 99. Persons dealing with them as officers in the discharge of duties prescribed by statute, cannot, if they exceed their authority, hold the town responsible. Digest 13, s. 69; *Glidden* v. *Unity*, 30 N. H. 104, 120. And, so far as they are merely "agents," they are subject to the control of the town, and it can at any time revoke their authority, and appoint others in their place.

And as to highway surveyors, the statute does not designate them as "agents," but gives them, as "highway surveyors," authority to purchase timber, plank, and other materials necessary for the repair of highways and bridges in their district, at the expense of the town. And although, in *Hardy* v. *Keene*, 52 N. H. 370, Judge *Foster* says a highway surveyor "may be the town's agent, so to speak, to charge them with notice of a defect in the highway," it is only a convenient, but neverthele an inaccurate, way of stating the liability of the town, under the decisions since *Hubbard* v. *Concord*, 35 N. H. 52, for defects that have existed so long that they ought to be repaired. It is a necessary modification of a rule, not found in the statute, but introduced by the court in *Hubbard* v. *Concord* and *Johnson* v. *Haverhill*, 35 N. H. 74. And in this very case Judge *Foster* says that "the surveyor cannot be regarded as the agent of the town for the purpose of imposing upon the town a liability on account of his negligence." That is, he is not an agent for the purpose of imposing upon the town a liability on account of his negligence, but he is an agent, "so to speak," to charge it with notice of a defect. Perhaps such seeming contradiction in the use of the word was unnecessary. The whole basis of the town's liability is, that by positive statute (as stated by Judge *Ladd* in *Gilman* v. *Laconia*, 55 N. H. 132) the duty and the liability are placed upon the town, and therefore no negligence of any officer or officers of the town can exempt it from what the statute has expressly laid upon it. If the town would not be liable in an action against it to recover damages, on account of any negligence of the town-clerk, it is because his act is not the act of the town, and the town is in no way responsible for him. 2 Thomp. Neg. (1880) 892; 3 Shearm. & Red. Neg. (1874–'80) s. 137; Cool. Torts (1880) 620, 621; Dill. Mun. Cor., s. 974; Wood Mas. & S., s. 458, and cases cited; *Kelly* v. *New York*, 11 N. Y. 432; *Blake* v. *Ferris*, 5 N. Y. 48; *Maxmilian* v. *Mayor*, 62 N. Y. 164; *Ham* v. *Mayor*, 70 N. Y. 464.

A rule so strongly supported has not been adopted without solid reason. Its enforcement may occasion hardship in some cases, but it is necessary for the protection of municipalities from being plundered and defrauded. In the case before the court, the rule,

and the reason for it, are applicable. It has never been understood that a town is responsible for its town-clerk, consequently towns do not, as in Vermont, take bonds of the clerk. He performs a public service, not "peculiarly or principally local or corporate." The mode of selection in no way affects his duties, and is adopted because this mode of selection has been deemed expedient by the legislature. And the town can neither discharge him nor control him in the performance of his duties. The town has no property in the railroad, and will have none. We understand the town-clerk has, and this may account for the imperfect record;—whether he has or has not, to hold the town answerable would afford great facility for fraud. On the other hand, it can rarely happen that a party acting upon a public vote in open town-meeting will not know its substantial character, especially in matters of general interest. The omission in the record was in respect to a vote, the character of which could have been readily ascertained by inquiry, and not as to a mere irregularity in a matter impossible or difficult to know, as in *Moore* .v. *Mayor*, 73 N. Y. 238. And see, also, dissenting opinions of Justices *Miller*, *Davis*, and *Field*, in *Humboldt* v. *Long*, 92 U. S. 642; 1 Dill. Mun. Cor., *s.* 528, *n.* If the town-clerk is but a public officer, for whose negligence the town cannot be held in damages, there is no principle or authority upon which the town can be concluded by his act, irrespective of any question of notice; and to hold it concluded would be a most dangerous innovation.

This cause is as between the original parties, for the trustee is not to be charged unless a suit could be maintained by the railroad.

A party may be estopped by non-action, but only where he knows that the other party is acting under a false impression. The town must be in fault, or it cannot be estopped from showing the truth, even if the railroad was misled, without reversing all principles upon which the doctrine of estoppel has heretofore been supposed to rest. It was not in fault in supposing that the clerk had recorded the vote as it was passed. This is the whole thing in a nut-shell.

CARPENTER, J. It must be taken, for the purposes of the case, that the defendants built and completed the railroad, relying in good faith upon the vote of the town as originally recorded by the town-clerk, but that the actual vote was as expressed in the amendment of the record allowed by the court. The question of chief importance is, whether the amendment can be properly allowed against the objection of the plaintiffs, and without the defendants' consent.

Towns have frequent occasion to transact business which their ordinary officers have no power to perform, and which can be done only by direct corporate action, or by special agents under author-

ity conferred by such action.  G. L., c. 37 ; *Underhill* v. *Gibson*,
2 N. H. 352 ; *Andover* v. *Grafton*, 7 N. H. 298 ; *Carlton* v. *Bath*,
22 N. H. 559 ; *Rich* v. *Errol*, 51 N. H. 350.

Direct corporate action must be taken by vote in open town-
meeting, and a majority controls.  The votes may be so nearly
equally divided, that, with or without polling, it is difficult to
determine with certainty what is the voice of the town, and the
party declared defeated may honestly believe the declaration
erroneous, as it possibly may be in fact.  Motions and resolutions
are not always presented in writing, and they may be amended in
various particulars before their final adoption.  The exact language
in which they are expressed is generally material and important.
If, whenever the action of the town is put in issue, it were left to
be determined on the testimony of those present at the meeting,
in many cases it could never be ascertained with reasonable cer-
tainty : the transaction of business dependent upon it would be
impracticable, and in all cases the inconvenience would be intol-
erable.  For this reason, among others, the law provides that in
every town-meeting there shall be two officers sworn to the faith-
ful discharge of their duties,—a moderator, who is required to
" make a public declaration of all votes passed " (G. L., c. 39, s. 3),
and a town-clerk, who is required to " record all votes passed by
the town."  G. L., c. 40, s. 1.  The record made by the clerk is
conclusive of the facts therein stated, not only upon the town, but
upon all the world so long as it stands as the record.  Its accuracy
cannot be drawn in question collaterally.  It can be contradicted
or impeached only in proceedings instituted directly for the pur-
pose, and to the end that it may be corrected.  So long as it
is in existence, and can be produced, it is the only competent
evidence of the action of the town.  If it is destroyed or lost,
parol evidence may be received to show what it was, but not to
prove what the vote was except in so far as such proof may
tend to establish the contents of the record.  *Pickering* v. *Picker-
ing*, 11 N. H. 144; *Greeley* v. *Quimby*, 22 N. H. 335; *Harris* v.
*School District*, 28 N. H. 66 ; *Orford* v. *Benton*, 36 N. H. 403 ;
*Farrar* v. *Fessenden*, 39 N. H. 268 ; *Hampstead* v. *Plaistow*, 49
N. H. 96 ; *Railroad* v. *Peterborough*, 49 N. H. 294 ; *Bell* v. *Pike*,
53 N. H. 473 ; *Hill* v. *Goodwin*, 56 N. H. 441 ; *Saxton* v. *Nimms*,
14 Mass. 320 ; *Thayer* v. *Stearns*, 1 Pick. 112 ; *Taylor* v. *Henry*,
2 Pick. 397 ; *Manning* v. *Gloucester*, 6 Pick. 6 ; *School District* v.
*Atherton*, 12 Met. 105 ; *Mayhew* v *Gay Head*, 13 Allen 129 ; *Mor-
rison* v. *Lawrence*, 98 Mass. 219 ; *Andrews* v. *Boylston*, 110 Mass.
214 ; *Halleck* v. *Boylston*, 117 Mass. 469 ; *Moor* v. *Newfield*, 4
Me. 44 ; *Samis* v. *King*, 40 Conn. 304, 305 ; *People* v. *Adams*,
9 Wend. 333 ; *People* v. *Zeyst*, 23 N. Y. 140.

It is immaterial whether the clerk in making the record act as
the agent of the town, or as a public officer in the performance of
a duty imposed by law.  At any time before the rights of third

persons have attached, a town may rescind its votes, or the record thereof, if erroneous, may be amended in accordance with the facts; but votes cannot be rescinded to the prejudice of rights which have accrued under them. *Mitchell* v. *Brown*, 18 N. H. 315; *Pond* v. *Negus*, 3 Mass. 230; *Damon* v. *Granby*, 2 Pick. 345; *Nelson* v. *Milford*, 7 Pick. 18; *Hunneman* v. *Grafton*, 10 Met. 454; *Withington* v. *Harvard*, 8 Cush. 66; *Hall* v. *Holden*, 116 Mass. 172; *Curnen* v. *The Mayor*, 79 N. Y. 511. 1 Dill. Mun. Cor., *ss.* 228, 232, and cases cited. The question now is, whether the court can properly permit the erroneous record to be amended according to the truth, to the destruction of rights acquired under it in good faith, without notice of the error. Mistakes are inevitable, and their causes numerous. Considering the noise and confusion not unfrequent in town-meetings, the liability of the moderator to misunderstand motions verbally submitted, or to err in declaring the result; of the clerk to mistake the declaration of the moderator; to misconceive the motion or the amendments adopted; or to fail to recollect or to record the exact language,—the wonder is that errors are not more frequent.

To permit the record to be altered or amended in accordance with facts found upon the testimony of witnesses, after individuals have dealt with the town and invested their money, or performed labor upon the faith of the vote as recorded, would produce the same mischief as if no record were required. No one could safely engage in transactions with a town, or with its special agents, without first ascertaining the accuracy of the record. In attempting to do this, the same difficulty would be met as if there were no record. An appeal to the recollection of those who were present when the vote was passed would generally afford the only means by which its truthfulness could be tested. The officers of the meeting might pronounce it correct, but their recollection would be no more authoritative, and might be no more reliable, than that of others. Should every person present be consulted, and concur in declaring the record right, the assurance that it would not be shown to be incorrect when long afterward the town should be called upon to perform its contract might not be materially fortified. They might all be mistaken, and, with memories subsequently refreshed by circumstances, remember that they were mistaken. The possibility of such unanimity, both in the error and in its correction, is doubtless remote; but the mischief arising from the not improbable conflict of recollection would be little less. Men naturally and unconsciously incline to believe what they wish to believe—what it is for their interest that the truth should be. The most intelligent, conscientious, and disinterested witness to long past transactions often finds it difficult, if not impossible, to distinguish inference from recollection,—to separate facts which he comes to by a process of reasoning, from those which he remembers,—and, if his personal interests are concerned, is not unlikely

to reach a conviction that he recollects what in truth he only argues or infers from other facts must have existed. For these, and various other causes, the weight of procurable testimony might often be against the verity of the record when brought in issue long after the transaction dependent upon it, although at the time of the transaction its accuracy was confirmed by all the obtainable evidence. In all cases the essential element of certainty would be wanting. Although the town's recorded vote should authorize the selectmen or special agents to borrow money, to employ counsel, or to buy or sell a town farm; should provide for the funding of its debt, the establishment of a library, park, or cemetery, the publication of an early history of the town, the erection of a monument, or for any other thing within its power (Gen. Laws, c. 37),—no one could lend his money, act as counsel, buy of or sell to the town a farm, publish a town history, erect a monument, or render other services apparently warranted by the vote, with a certainty that he could hold the property he bought, recover the money he lent, the stipulated consideration for the property he sold, or compensation for his services, and by no care and prudence on his part could he make it certain. After the most painstaking and exhaustive examination in his power to make, his rights would still depend on the uncertain result of a future judicial finding of what the town's vote actually was, to be made necessarily upon the direct testimony of more or less hostile witnesses, in connection with the evidence afforded by surrounding circumstances, and finally determined by a balance of the probabilities. Such a state of things would be as damaging to the corporations as to the individuals dealing with them; as detrimental to the public welfare as to private rights. *Saxton* v. *Nimms*, 14 Mass. 320, 321; *People* v. *Zeyst*, 23 N. Y. 145, 146. It makes no substantial difference whether the record may be impeached or modified by means of an amendment founded upon extrinsic evidence, or by such evidence without an amendment: the practical result in each case is the same. A record not conclusive until it is proved to be right, not reliable unless it is shown to be correct, would be no better than no record, and its tendency to mislead might make it worse than none. In the language of *Ladd*, J., in *Bell* v. *Pike*, 53 N. H. 478,—" For all the practical uses of a record, it is no record at all. It lacks the fundamental attribute of verity, without which the first and most important definition of a record is not answered. It cannot form the basis of action anywhere, or for any purpose. It leaves the truth to be ascertained by an investigation of the antecedent facts upon which it purports to be based, as much as if nothing had been written." The law requires a record to the end that those who may be called to act under it may have no occasion to look beyond it; to avoid the mischief of leaving municipal corporate action to be proved by parol evidence; to make it certain that rights which have accrued under such action shall not be

destroyed or affected by the always fallible and often wholly unreliable recollection of witnesses, however truthful and intelligent they may be. For similar reasons the law requires conveyances of land, wills, certain contracts, and legislation to be in writing.

When a town by its corporate vote makes an offer or proposition, to be accepted or rejected by a person at his pleasure, substantial reasons might be given for requiring it to see, at its peril, that the proposition is correctly stated in the record, and for holding that after the recorded offer is accepted and acted upon the town is estopped from amending it, or from availing itself of an amendment made according to the fact. *New Haven &c. Railroad* v. *Chatham,* 42 Conn. 465. However this may be, and conceding that a town is no more responsible for the action of the clerk than is any person whose interests may be affected by the record, there is no reason why towns should stand in a more favorable position in respect to amendments than individuals who deal with them, or have occasion to act on the faith of the record. Amendments of the record upon which a tax title is founded, of levies upon execution, or of a sheriff's return, are not allowed, as against prior purchasers of the property in question for a valuable consideration in good faith, and without notice express or implied, of the facts sought to be introduced into the record. *Gibson* v. *Bailey,* 9 N. H. 168; *Whittier* v. *Varney,* 10 N. H. 291; *Bean* v. *Thompson,* 19 N. H. 294; *Cass* v. *Bellows,* 31 N. H. 511; *Avery* v. *Bowman,* 39 N. H. 393; *Bank* v. *Webster,* 44 N. H. 264; *Jaquith* v. *Putney,* 48 N. H. 138; *Williams* v. *Brackett,* 8 Mass. 240; *Emerson* v. *Upton,* 9 Pick. 167; *Johnson* v. *Day,* 17 Pick. 106; *Hovey* v. *Wait,* 17 Pick. 196; *Freeman* v. *Paul,* 3 Me. 260; *Means* v. *Osgood,* 7 Me. 146. And generally amendments are not allowed to affect the vested rights of third parties, or where injustice will be done to any one. *Chamberlain* v. *Crane,* 4 N. H. 115; *Goodwin* v. *Smith,* 4 N. H. 29; *Bowman* v. *Stark,* 6 N. H. 459; *Smith* v. *Moore,* 17 N. H. 384; *Wendell* v. *Mugridge,* 19 N. H. 109; *Baker* v. *Davis,* 22 N. H. 27. No reason has been assigned, and none is perceived, for exempting towns from the operation of the general rule. These considerations afford a sufficient answer (if there were no other) to the suggestion that "no decision has been produced which goes to the extent of holding the town estopped from having the record put right, merely because it has been trusted to and acted upon." *New Haven &c. Railroad* v. *Chatham,* 42 Conn. 465, was an application for a *mandamus* to compel the defendant town to guarantee certain bonds issued by the plaintiffs. In 1871 the legislature authorized the town to guarantee the bonds, "provided, however, that at any town-meeting called for acting under the provisions of this resolution, the vote upon the question of guaranteeing said bonds of said railroad company shall be taken by ballot." At a meeting called for the purpose, October 14, 1871,

a resolution inserted in the warning, directing the selectmen to guarantee the bonds on certain conditions, was adopted. The vote was not taken by ballot, and was recorded as follows : " Voted, that the resolution prescribed in the warning be adopted. Yes, 178. No, 86." The plaintiffs, in good faith, relying upon the recorded vote, and without notice that it was not taken by ballot, made contracts for building their road, issued the bonds and delivered them, together with an order on the defendants for the guaranty, to the contractors, who in like good faith received them, performed work, furnished materials, and expended money in reliance upon the promised guaranty. In November, 1874, after the plaintiffs had fully performed the conditions stated in the resolution, and the defendants' selectmen had refused to execute the guaranty, this application was filed. The superior court, at the April term, 1875, upon the petition of an inhabitant of the town, ordered the record of the vote to be amended by making to it this addition : " Said vote was taken by a division of the house and a count, and not by ballot." The defendants were held estopped from claiming that the vote was not taken by ballot, or from availing themselves of the amendment ordered by the superior court, and a peremptory *mandamus* was granted. See, also, *Moore* v. *Mayor &c. of New York*, 73 N. Y. 238.

The building and completion of the railroad upon the faith of the recorded vote, and according to its provisions, constituted a contract executed on the part of the defendants, as where a reward is offered upon certain conditions, and an individual relying upon the offer performs the conditions. *Janvrin* v. *Exeter*, 48 N. H 83. It is as if the defendants and the town had executed a written agreement—the defendants to build the railroad in the time and manner expressed by the vote, and the town in consideration thereof to pay the sum stated—and the defendants had performed their part of the contract. In an action brought by them to recover the money, parol evidence could not be received to show that a stipulated condition was omitted by mistake of one party, or even of both, or in any way to contradict or modify the terms of the agreement. If the writing did not express the actual contract, the only remedy would be by bill in equity to reform it.

In *Chamberlain* v. *Dover*, 13 Me. 466, and *Turnpike* v. *Pomfret*, 20 Conn. 590, the only cases cited as holding that an amendment may be properly allowed in such a case as this, it does not distinctly appear that the plaintiffs acted upon the faith of the original record, or that they did not know the facts to be as stated in the amendment. The amendment was made by the clerk of his own motion The court held that acting at his peril, he might properly do so ; that the amended record must be taken to be the true one, and conclusive of the facts, until, if false, corrected in proceedings instituted for the purpose. It has never been held in this state that the clerk may amend the record, except under

the direction of the court, and upon a showing that justice requires it. *Gibson* v. *Bailey*, 9 N. H. 176 ; *Low* v. *Pettengill*, 12 N. H. 337 ; *Cass* v. *Bellows*, 31 N. H. 501 ; *Pierce* v. *Richardson*, 37 N. H. 311.

The position, that the vote as recorded could not be taken under the article in the warrant; that the town could only vote to dismiss it, or to give a greater or a less per cent. of its valuation upon the precise conditions and limitations expressed in the article,—cannot be sustained. The statute requires that " the subject-matter of all business to be acted upon shall be distinctly stated in the warrant." G. L., *c.* 38, *s.* 2. The purpose of the requirement is to inform the inhabitants of the business upon which they are called to act in the meeting,—" to bring before the town substantially and intelligently the subject with which it has to deal." *Tucker* v. *Aiken*, 7 N. H. 113, 125, 126 ; *Pittsburg* v. *Danforth*, 56 N. H. 272 ; *Matthews* v. *Westborough*, 131 Mass. 523. Here the matter to be acted upon was the question of aiding the defendant to build its railroad. Gen. Sts., *c.* 34, *s.* 16. The town might grant its aid upon such terms as it saw fit. If the limitations expressed in the article had been omitted, all or any part of them might have been incorporated in he vote. Their insertion did not preclude the town from rejecting them, or from granting aid upon other and different conditions. A vote to build a town hall thirty feet by fifty, under an article to see if the town will build one forty feet by sixty, might as well be held unwarranted. *Converse* v. *Porter*, 45 N. H. 395 ; *Child* v. *Colburn*, 54 N. H. 71 ; *Pittsburg* v. *Danforth, supra ; Haven* v. *Lowell*, 5 Met. 35 ; *Hadsell* v. *Hancock*, 3 Gray 526 ; *Sherman* v. *Torrey*, 99 Mass. 472 ; *Reed* v. *Acton*, 117 Mass. 384, 390 ; *Wood* v. *Jewell*, 130 Mass. 270 ; *Bartlett* v. *Kinsley*, 15 Conn. 332.

It is urged that the language of the article in connection with that of the vote was of itself sufficient to put the defendants upon inquiry, and that they are therefore chargeable with notice of the error in the record. It is not perceived how anything contained in the article could naturally or legitimately tend to show, or lead to a suspicion, that the record of a vote which could lawfully and properly be taken under it was erroneous; how the absence in the record of a clause in the article, which for good reasons might properly be rejected, is calculated to lead to the inference that it was erroneously omitted. The recorded vote provided for the gratuity in case the road should be completed in a reasonable time, which might be longer or shorter than the time mentioned in the article. It was the same in legal effect as if the words " to be completed in a reasonable time " had been added to the record. For adopting this limitation rather than that specified in the article, or any other fixed and definite time, the town might have satisfactory reasons. It was not so extraordinary, unreasonable, or unnatural action as upon its face to excite suspicion that it could not have been taken.

It is suggested that the granting of the amendment rested in the discretion of the presiding justice who allowed it, and that the question of discretion is not reserved and cannot be revised. Whether upon the facts stated the amendment can be allowed, is a question of law ; if it can, whether justice requires that it should be, is a question of fact to be determined at the trial term.   The first question only has been considered.

*Motion for rehearing denied.*

STANLEY, J., did not sit : BLODGETT, J., dissented: the others concurred.