## PERRY'S PETITION.

The omission to give a correct account of taxable property, which authorizes the imposition of fourfold the tax, must be wilful and fraudulent.

If the fourfold tax contemplated by the Revised Statutes, chapter 41, section 6, has been erroneously imposed, the court will abate so much thereof as is equitable, and will leave in force so much as ought to have been assessed, if any.

PETITION for the abatement of taxes assessed upon the petitioner by the selectmen of Temple, on the first day of April 1843.

It was admitted that the petitioner duly tendered to the selectmen a correct invoice of his property liable to taxation, unless he was liable to be taxed for the sum hereafter mentioned, and that he at that time said something to the selectmen in relation to said sum, but did not give it in as property for which he was liable to taxation, and denied that he was so liable.

On the first day of July 1834, the petitioner made a special deposit of $400; and on the 29th day of September in that year, he made another special deposit in "The Cheshire Provident Institution for Savings," at Keene in this State, both on the following terms: viz.,

"JULY 1, 1834. I this day deposit in The Cheshire Provident Institution for Savings, $400, for the benefit of Caroline Perry, only child of the late Caleb Perry, late of Troy, N. H., the principal and interest to be paid to the said Caroline when she arrives at the age of twenty-one years, and not before. And in case of her decease before she arrives at that age, the same is to be paid to me or my heirs on demand.

CALEB PERRY."

On the 25th day of May 1842, the petitioner called on the trustees of said institution, and told them he had mistaken the amount of his property, and wished to withdraw the interest which had accumulated on the sums deposited, amounting to $255.16, and it was then paid him. The said Caroline is now living, and is under the age of twenty-one years.

The selectmen assessed the petitioner by way of doomage, for four times the amount of the deposits on the 1st day of April 1843.

The court ordered the amount of tax on said deposits to be abated, to which order the town of Temple excepted.

*Farley*, for the petitioner.

*G. Y. Sawyer*, for Temple.

Perry's Petition.

Woods, J. The Revised Statutes, chap. 39, sec. 3, provide, that money on hand or at interest, including money deposited in any bank or savings institution, shall be taxed. Chap. 40, sec. 1, provides, that every person shall be taxed in the town in which he is an inhabitant or resident on the first day of April, for his poll and estate, except in cases otherwise provided for by law. The fourth section provides, that stock in banks, insurance and other corporations, except railroad and other corporations in this State, shall be taxed to the owner thereof, if he resides in the State.

Perry resided in the State, and was, therefore, liable to be taxed for the money deposited in the bank, provided he was the owner of it. We are of the opinion that Perry was the owner, notwithstanding the deposit was to the use of Caroline Perry. We think that the deposit in the bank can not be distinguished from a deposit in the hands of an individual. It would be clear that if the money had been left in the hands of an individual, it would have remained the property of the depositor, at least until it had been accepted by the person for whose use or benefit the deposit was made. There was no consideration for it. It was a mere gratuity, and inchoate gift, and the property did not pass from him who meditated the gift, until it was accepted by her for whom it was intended. 2. Kent's Com. 438–9. 1 Leading Cases in Chan. 190.

Money deposited for the purpose of paying the debt of the depositor, may be reclaimed at any time before its acceptance by the creditor, upon the ground that till that event, the money remains the property of the depositor.

Being, then, liable to be taxed, the question is, whether the petitioner was properly taxed for four times the amount of the deposit. This is not a case of doomage, which is where the party when required does not give in any invoice, or having given it, declines to make oath to

it. The statute in such case gives authority to the select-men, to "set down to such person, by way of doomage, as much as they shall judge equitable." Rev. Stat., chap. 41, secs. 4, 5.

The petitioner was assessed for the deposit, a sum four times as great as that which would ordinarily be assessed upon that amount of property. This can be legally done only by virtue of the sixth section of the chapter that has been cited, providing, that if any person, in giving to the selectmen the account of taxable property required by the preceding sections, "shall wilfully omit any part of the estate for which he is taxable, the selectmen may, upon discovery of the fraud, assess such person in all taxes of that year four times as much as said estate, if given in, would be legally taxable."

Does this case fall within that section? The petitioner gave in a correct invoice of all his other property liable to taxation, and said something at the time to the select-men relative to the money in controversy, but did not give it in, and denied his liability to be taxed for it. Does the case find a wilful omission on the part of the peti-tioner to give in his property for taxation within the meaning of the sixth section? We think not. He spoke of it, and denied his liability to be taxed for it. It does not appear precisely what he said. It does not appear that he did not inform the selectmen of every fact relat-ing to the property. On the other hand, it would seem quite probable that it was his opinion that he was not taxable. Under the circumstances, we can not say that he wilfully omitted to give in a perfect invoice.

A severe penalty is provided by the statute for the wil-ful omission there described. Now we think, that before this penalty can properly be inflicted, the party must be brought clearly within the terms of the statute. He must after due notice, or upon personal application as provided in the fourth and fifth sections, in giving the account re-

quired, wilfully omit some part of the estate for which he is taxable. A mere mistake, whether in the fact of ownership, or the liability of the owner to taxation, or to be taxed to himself, by which the omission is occasioned, is not in our judgment the wilful omission upon which the penalty is visited. The statute contemplates some positive and known wrong, as the foundation and essence of the offence to which the penalty is annexed. The case finds no such wrong, and no such wilful omission, and the fourfold tax was, therefore, illegally imposed.

To what extent the petitioner should be relieved, is the remaining question. Coming into court for equitable redress, it is reasonable that he should himself do equity. He ought to have given in the property to be taxed. It was legally taxable to him. He erred in his omission to do so, and the selectmen also erred in assessing the fourfold tax. Let three fourths of the sum assessed be abated, and the remainder should be paid.

*Three fourths of the tax abated.*