PAUL *v.* LINSCOTT.                      {Mar. 20, 1876.

*Sale of non-resident land for taxes.*

The grant of a county tax must be proved by the record of the doings of the county convention.

After the record of the invoice of non-resident taxes, required by General Statutes, ch. 53, sec. 6, the selectmen recorded in their book of records the warrant to the collector, and signed their names at the end of the warrant. *Held,* a good assessment.

The town had been lotted. The land was described in the non-resident invoice by the name of the owner, the number of acres, and a specific description by which it might readily be known, so as to meet the requirements of General Statutes, ch. 50, secs. 17, 18. It was described in the same way in the list delivered by the selectmen to the collector with the warrant, the number of lot and range not being given. *Held,* a sufficient description in the list.

In an action of trespass *quare clausum fregit,* by the purchaser of land sold for taxes, the plaintiff cannot recover for acts done on the land during the year succeeding the sale, and before the delivery of the collector's deed, no possession or other right to possession being shown.

FROM CARROLL CIRCUIT COURT.

TRESPASS, *qu. cl. fr.,* for breaking and entering the plaintiff's close, situate in Eaton, known as the E. G. Linscott pasture, on January 15, 1874, and on divers days and times between that day and the date of the writ, and cutting down and carrying away 100 hemlock trees and 100 spruce trees, of the value of $200, &c.—writ dated February 18, 1874. Trial by court, SMITH, J. The plaintiff introduced the record of the annual town-meeting in Eaton, 1872, and it did not thereby appear that the selectmen were elected by ballot. Thereupon the plaintiff introduced one Robinson as a witness, who testified, subject to the defendant's exception, that he acted as selectman in 1871 and until the board elected in 1872 were qualified, that he assisted the moderator in counting the votes, and that the election was by ballot. The plaintiff thereupon asked leave to have the record amended, so as to show that the election was by ballot. Leave to amend was granted, and the defendant excepted. The plaintiff introduced the original bond of Charles Robertson as collector. The defendant objected that the time when said bond was filed should have been certified thereon by the town-clerk; but the same was read in evidence, and the defendant excepted. The plaintiff introduced the warrant of the treasurer of Carroll county, dated February 22, 1872, to the selectmen of Eaton, requiring them to assess, as the proportion of the county tax of

said town for 1872, the sum of $539.42. The defendant objected that the records of the county convention should be produced; but the court admitted the warrant of the county treasurer, and the defendant excepted. The plaintiff also introduced the record of the invoice of resident taxes for 1872, subject to the defendant's exception;—also, record of non-resident invoice and assessment for 1872, in which the defendant was assessed for state, county, town, and school taxes, $3.67; highway taxes, $3.48. In the column headed "Description," the description was, "E. G. Linscott pasture, joining White farm."

The list was not signed by the selectmen, otherwise than immediately following the list was the record of the warrant to the collector, signed by the selectmen, requiring him to collect the taxes "in the list herewith committed to you," &c. The court allowed the record to be given in evidence, and the defendant excepted.

The plaintiff offered a paper purporting to be the original invoice and assessment of non-resident taxes for 1872, dated April 16, 1872, signed by the selectmen of Eaton, and is the same as the record above mentioned with the exception of the signatures of the selectmen. Said Robertson testified that said paper was delivered to him at the same time with his warrant, which bears the same date, by the selectmen, who said it was the original assessment of non-resident taxes, and requested him to accept it instead of a copy. Said paper was received, and the defendant excepted.

The plaintiff introduced a letter from the deputy secretary of state, dated October 17, 1872, returning therewith the non-resident list, and stating that nothing had been collected thereon, which was received subject to the defendant's exception.

Deed from Charles Robertson, collector, to Albert Paul, dated January 28, 1874, executed and acknowledged January 29, 1874, and recorded April 29, 1875,—received subject to the defendant's exception. The description in said deed is as follows: "A certain piece of land, known and described as follows, viz., The E. G. Linscott pasture, joining the White farm on the north side, and containing fifty acres, more or less, meaning to convey all of the land Linscott owned in Eaton in this *peace.*"

The plaintiff introduced evidence tending to show that the premises are commonly known as the E. G. Linscott pasture, also as the Gerry Linscott pasture, and that it adjoins the White farm on the south and west; that the defendant owned no other land in Eaton besides this pasture; and that he is sometimes called Gerry Linscott.

The town of Eaton had been lotted prior to 1872. The plaintiff's evidence tended to show that the defendant cut and drew off, from the premises in dispute, timber, between the day of the sale, January 25, 1873, and the date of the plaintiff's deed, January 28, 1874. The defendant claimed that the plaintiff could not recover for timber cut and drawn off prior to January 28, 1874; and the court so ruled, and the plaintiff excepted.

The defendant claimed that the tax of 1872 against the defendant

was illegally assessed, because the number of the lot and range was not inserted in the list; but the court ruled otherwise, and the defendant excepted.

The questions arising upon the foregoing case were transferred to this court for determination.

*Eastman* and *Copeland*, for the plaintiff.

*F. Hobbs, Quarles,* and *Hastings,* for the defendant.

LADD, J. A large number of exceptions were taken by the defendant at the trial, only a few of which are insisted on in the argument. I have looked at such as appear to be of importance, in view of another trial of the case.

(1) I see no reason why the amendments of the town records were not properly allowed. (2) The requirement of the law as to the collector's bond seems to have been answered, and I think there is nothing in this objection. (3) The warrant of the county treasurer was not sufficient evidence of the granting of the county tax. The records of the county convention were necessary, and this exception must be sustained. *Cardigan* v. *Page,* 6 N. H. 182; *Scammon* v. *Scammon,* 28 N. H. 432. (4) The record of the invoice of non-resident taxes for 1872 seems to have been quite immaterial, so far as I can gather from the case. (5) The next exception is to the admission of the record of the non-resident invoice for 1872; and we may consider, first, the objection that it was not signed by the selectmen, except as their signatures followed the record of the warrant. This record is quite a different thing from the list and warrant delivered to the collector, and the two must not be confused in inquiring what are the requisites of each. Gen. Stats., ch. 53, sec. 6, provides that "A fair record shall be made of every invoice taken by the selectmen, and of all taxes by them assessed, in a book of records of the doings of the selectmen in their office, which shall be the property of the town," &c. This record, which the selectmen are thus required to keep, is the assessment—*Perkins* v. *Langmaid,* 36 N. H. 501; and I am not aware of any statute which requires it to be signed by them in any particular way. By Gen. Stats., ch. 55, sec. 1, "A list of the taxes assessed on the real estate of persons not resident in the town shall be made by the selectmen under their hands," &c. This is the list to be delivered to the collector, and is, as just remarked, a different thing from the record required by the act quoted above. This list must be under the hands of the selectmen. As I understand the present case, no question arises like that in *Bailey* v. *Ackerman,* 54 N. H. 527, as to whether the names of the selectmen at the end of the warrant are, under the circumstances, sufficient,—so that the list can for that reason be fairly said to be under the hands of the selectmen; for it appears that a paper, purporting to be the original invoice—being, in fact, a perfect list of the taxes, and signed by the selectmen as required by law—was given to

the collector at the same time with his warrant. This was enough: the requirements of the law, so far as I can see, were fully met. It makes no difference that the selectmen erroneously supposed this paper, instead of the record, to be the original assessment. After they had made the record in the book—which did, in fact, constitute the assessment—no reason is seen why the original paper, from which the record was made, might not be used by them as the list which they were required to deliver with the warrant to the collector.

We may as well consider here the further objection, that this land was set down in the list as the " E. G. Linscott pasture, joining the White farm," and not by the number of the lot and range.

In order to ascertain the intention of the legislature on this point, it will be necessary to examine the statutes somewhat carefully. The provisions as to taxing the lands of non-residents are found in Gen. Stats., ch. 50, secs. 17, 18, and are as follows: " Sec. 17. If no person is in possession or occupation of any building deemed by the selectmen to be tenantable, or of any other real estate improved as pasture, mowing, arable, or otherwise, the same shall be taxed as non-resident by such description as it may be readily known by, with the name of the owner, if known. Sec. 18. Unimproved lands of non-residents shall be taxed in the name of the owner, if known ; otherwise, in the name of the original proprietor, if known ; otherwise, without any name, and by the number of the lot and range, and the quantity thereof, if lotted, or by such other description as it may be readily known by." Now, if the E. G. Linscott pasture was land improved as pasture at the time of the taxing in 1872, it is manifest that it would fall under section 17, and would be rightly taxed by such description as it might be readily known by. The case does not show whether it was so improved or not. Suppose it was not, but is to be regarded as unimproved land, and described in the invoice according the provisions of section 18 : looking at the copy of the invoice, as given by the defendant's counsel in their brief, it appears that it was taxed in the name of the owner; —and this, so far as I can see, answers the requirement of this section of the statute. I am unable, therefore, to discover from the case any reason why the taxing was not well enough; but the objection is, that, in the list delivered to the collector with the warrant, which is a copy of the invoice on the book (or, what amounts to the same thing, the original paper from which that record was made), the description is not such as the law requires. The statute relied on to support this position is as follows : "A list of the taxes assessed on the real estate of persons not resident in the town shall be made by the selectmen under their hands, in which shall be inserted the name of the owner, if known ; otherwise, the name of the original owner, if known ; the number of the lot and range, if lotted ; otherwise, such description as the land may be readily known by ; the number of acres, and the amount of taxes assessed thereon." Gen. Stats., ch. 55, sec. 1. The town of Eaton was lotted, but the number of the lot and range in which the E. G. Linscott pasture is situated was not inserted in the list

given to the collector with the warrant; and this, the plaintiff contends, is a fatal defect. All the other requirements of the statute are met,— the name of the owner, the number of acres, the amount of tax, and (as is to be assumed) a description by which the land may readily be known, namely, the "E. G. Linscott pasture, joining the White farm." The question is, whether the provision as to inserting the number of the lot and range is imperative, or whether, by the use of the word "otherwise," the alternative of inserting such description as the land may readily be known by is allowed. I am, upon the whole, inclined to the opinion that the latter is the true construction. The language used is capable of that interpretation. To hold otherwise would require a description in the list different from that required in the assessment in every case where the lands are improved or when the name of the owner is known.

In a vast number of cases that may be supposed, where the land constitutes only a small part of an original lot, the number of the lot and range would most manifestly be a description entirely imperfect and insufficient: for example, building lots in villages and cities.

I do not find but one case where the matter has been alluded to arising since the statute was put in its present form—*Ainsworth* v. *Dean,* 21 N. H. 400; and in that case, before holding the description in the list to be insufficient, GILCHRIST, C. J., is careful to show that neither alternative of the statute was fulfilled; that the number of the lot and range was not given, though the town had been lotted; and, also, that there was no other description such as the land might readily be known by. I think the court might hold either way without doing violence to the language of the statute; but this construction seems to me, on the whole, to accord better with reason, and the probable intention of the legislature, when all the statutes relating to the subject are read together, than the other.

Whether the description, "E. G. Linscott pasture, joining White farm," is one by which the land may readily be known, involves a question of fact which cannot be determined here.

(6) I think the letter of the deputy secretary of state was admissible for the purpose for which it was received. *Smith* v. *Messer,* 17 N. H. 429.

The statute is silent as to the possession of the land during the year after the sale. The interest which the purchaser acquires by the sale is pointed out by the statute, and is the right to have a deed at the end of the year, provided the land is not in the meantime redeemed. Trespass *quare clausum fregit* can only be maintained where there has been a disturbance of the plaintiff's possession, either actual or constructive. There is nothing here to show such disturbance or possession. Whether the purchaser acquires by the sale such an interest in the land as would entitle him, under any circumstances, to an injunction in equity to prevent waste and destruction of the freehold, we need not inquire. I think the case shows no ground upon which this action can be maintained for acts done on the land before the date of the collector's deed. I do not now see any legal reason why the action may

not be maintained for what was done after the deed, except the failure to show a legal assessment of the county tax. Unless that can be supplied on a further hearing, I think the action must fail. If it can be supplied, then, according to the provisions of the case, damages must be assessed for acts done after the collector's deed.

CUSHING, C. J. I have had some difficulty in reaching the conclusion that the record of the invoice and assessment of the non-resident taxes in the selectmen's book was sufficiently authenticated by the signatures of the selectmen, following immediately after the copy of the collector's warrant appended to the copy of the invoice and assessment. It is obviously the duty of the court, in this as in most other matters, to consider rather the substance than the form; and I think that in this case we can so far understand the warrant as referring to the invoice and assessment, that we may justly consider it as amounting to an authentication of that copy. In the view of the judge who delivered the opinion in the case of *Perkins* v. *Langmaid*, cited by my brother LADD, some authentication of the record seems clearly to have been required. It would not be enough, according to that opinion, to copy the invoice and assessment into the record-book of the selectmen, and leave it without any authentication. I find myself, however, unable to read the recorded copy of the collector's warrant, without understanding that it refers to the copy of the invoice and assessment immediately preceding it.

On the whole, I agree with the results reached by my brother LADD.

*STANLEY, J., C. C., concurred.

*Case discharged.*

---

* SMITH, J., having presided at the trial, did not sit.