PRESTON v. CUTTER, *Ex'r, & a.*
PRESTON, *Adm'r*, v. CUTTER, *Ex'r, Ap't.*
PRESTON, *Adm'r*, v. MUNROE *& a., Ap't.*
CUTTER, *Ex'r, Ap't, v.* PRESTON.

An indorsement of a promissory note belonging to a bank, made by the cashier, to himself, is voidable only, and operates to pass the legal title until avoided by the bank.

A new promise by an executor or administrator is sufficient to avoid the general six years statute of limitations; but he cannot waive the special statute which limits the time within which suit may be brought to three years after the original grant of administration.

The appointment of a creditor, as administrator of the estate of his debtor, suspends his right of action against the estate, and operates as a suspension of the statute of limitations with respect to his personal claim.

An administrator can maintain a bill in equity for the discovery of assets and the recovery of property conveyed by the deceased in fraud of his creditors, of whom he is one, so far as it is needed to pay the debts.

Such a bill may be maintained, if commenced within a reasonable time
  after evidence of the fraud is discovered, due diligence for its discov-
  ery having been used by the plaintiff; and, in the meantime, the stat-
  ute of limitations does not run.

When the purpose of the grantor is shown to have been fraudulent, it is
  sufficient to prove that the grantee takes without consideration, and
  his actual participation in the fraudulent intent need not be shown.

The first case is a bill in equity against Henry A. Cutter,
executor of the will of Mary R. Munroe, the Nashua Iron &
Steel Company, the Nashua Lock Company, the Nashua Savings
Bank, the Underhill Edge Tool Company, Eliza A. Munroe, and
Franklin O. Munroe. The second is an appeal by Henry A. Cut-
ter, executor, as above, from the allowance by the judge of pro-
bate, of the appellee's claim against the estate of Franklin Mun-
roe, deceased. The third is an appeal by F. O. Munroe and Eliza
A. Munroe from the last named order of the probate court. The
fourth is an appeal by the executor of the will of Mary R. Munroe
from a decree removing John C. Lund as commissioner on her
estate, on the ground that he was a creditor of said estate, done on
the petition of William A. Preston, administrator *de bonis non* of
Franklin Munroe, who is the plaintiff in the bill in equity. The
cases were heard together by a referee, and the material facts
found by the report appear in the opinion of the court.

*G. B. French, C. W. Hoitt,* and *Jeremiah Smith,* for the plaintiff.

*E. S. & H. A. Cutter, C. H. Burns,* and *C. R. Morrison,* for the
defendants.

CLARK, J. In the bill in equity the plaintiff seeks to reach
property in the hands of the defendant as administrator of the
estate of Mary R. Munroe, belonging, as the plaintiff alleges, to
the estate of Franklin Munroe, that it may be applied in payment
of the plaintiff's claim against the estate of Franklin Munroe. His
claim is a promissory note, dated September 1, 1863, signed by
F. O. Munroe and Franklin Munroe, originally given to the New
Ipswich Bank for the sum of $2,209.23. At a meeting of the
stockholders of the bank, held March 28, 1867, it was voted to
close the bank formally, and pay out the stock; and on or about
April 26, 1867, at a meeting of the directors, an agreement was
made between them and the plaintiff, who was then cashier of the
bank, that the plaintiff should take the note at its face value to
apply so far as it would go in paying off the outstanding stock and
liabilities of the bank. At that time the plaintiff was the owner
of all the outstanding stock except $1,950, the amount owned by
him being $10,005, and the note was taken by him in pursuance

of the bargain, and the amount of it treated as available funds in paying the liabilities of the bank and in the extinguishment of outstanding stock, including his own, to that amount. At the same time he wrote across the back of the note the words, "New Ipswich Bank. Will. A. Preston, Cas." No entry of the transaction appeared upon the records of the bank, and it did not appear that there was any formal call or notice of the meeting of the directors, nor did it appear whether any of the persons acting as directors in making the bargain with the plaintiff were owners of stock. A by-law of the bank provided that none but a member of the corporation being a citizen of this state, and resident therein, should be eligible for director. It appeared that the persons acting as directors had been directors since the last election, and the referee finds that they were *de facto* directors. The defendant contended that there was no legal transfer of the note to the plaintiff, because it did not appear but that all the directors who acted in making the bargain by which the plaintiff was to have the note, had before that time been paid for their stock in the course of winding up the bank, and also contended that parol evidence was not admissible to show the bargain whereby the note became the property of the plaintiff.

The plaintiff shows a valid title to the note. As cashier of the bank he could transfer the note by indorsement to any party but himself without special authority. *Corser* v. *Paul*, 41 N. H. 24 ; *Bank* v. *Haskell*, 51 N. H. 116, 121. And an indorsement to himself, being voidable only, would operate to pass the legal title until avoided by the bank. *Remick* v. *Butterfield*, 31 N. H. 70, 89 ; *Union Pacific Railroad Co.* v. *Credit Mobilier*, 135 Mass. 367, 376, 377. The transfer, however, was authorized by the acting and recognized directors of the bank, who are to be presumed rightly in office (*Jewell* v. *Gilbert*, 64 N. H. 13, *Hilliard* v. *Goold*, 34 N. H. 230, 239), under an agreement that the plaintiff should apply the amount of the note in discharging the existing liabilities of the bank and in the extinguishment of the outstanding stock ; and the agreement having been executed, the bank, having received and retained the avails of the note, could not avoid the transfer, and, the bank being bound, the defendant cannot question it. Due notice of the meeting of the directors is presumed to have been given, the contrary not appearing. *Sargent* v. *Webster*, 13 Met. 497, 504. It does not appear that the charter or by-laws of the bank required the bargain between the directors and the plaintiff respecting the note to be recorded, and there being no record, parol evidence was admissible to prove it. *Edgerly* v. *Emerson*, 23 N. H. 555.

It is contended that the plaintiff's claim is barred by the statute of limitations. The note was made September 1, 1863, and renewed by Franklin Munroe by the payment of $10.00, with the intent to renew it August 23, 1869, after it was transferred by the

bank to the plaintiff. Franklin Munroe died September 18, 1873, leaving a will which was proved, and F. O. Munroe appointed executor September 29, 1873. Within two years of the death of Franklin Munroe the note was presented to his executor as a claim against the estate, and he promised it should be paid. As two years from Franklin Munroe's death expired September 18, 1875, it does not appear whether the promise was within six years of the renewal of the note by him, which terminated August 23, 1875; but it was within the limitation prescribed by G. L., c. 198, s. 7, which provides that in cases where a right of action existed at the time of the death of the deceased, and survives, an action may be brought by or against the administrator at any time within two years after the original grant of administration. Two years from the original grant of administration on the estate of Franklin Munroe expired September 29, 1875, and no action having been brought upon the plaintiff's claim, it was then barred by the statute of limitations, unless it was in some way saved from the operation of the statute. If the promise of F. O. Munroe, the executor, had that effect, an action could have been brought by the plaintiff at any time within three years after the original grant of administration (G. L., c. 198, s. 5), which expired September 29, 1876. Before that date, on February 22, 1876, F. O. Munroe was removed as executor, and the plaintiff was appointed administrator *de bonis* of the estate of Franklin Munroe. If the promise of the executor had the effect to take the plaintiff's claim out of the operation of the statute, it was not barred when he was appointed administrator, and was then a valid claim against the estate of Franklin Munroe.

The decisions of this court bearing upon the question of the effect of a new promise by an executor or administrator in avoiding the statute of limitations seem to establish the rule that a new promise by an executor or administrator is sufficient to avoid the general six years statute of limitations, but is of no effect against the special statute limiting the time for bringing an action against an administrator to three years. The earliest case is *Hale* v. *Roberts, Adm'x*, cited in *Buswell* v. *Roby*, 3 N. H. 468. The defendant pleaded the statute of limitations, to which the plaintiff replied a promise within six years; and it was held that evidence of admissions made by the defendant as administratrix was competent to prove a new promise, although there was no allegation in the pleadings that the promise was made by her. Although the decision was upon a question of pleading, it recognizes the doctrine that a new promise by an administrator is sufficient to avoid the bar of the general statute of limitations.

In *Hodgdon* v. *White*, 11 N. H. 208, which was an appeal from a decree of the judge of probate granting a license to sell real estate for the payment of debts, it was objected that the debts were barred by the statute of limitations; and the question of the

power of an administrator to waive the bar of the statute was considered and authorities examined, and it was held that, while an administrator was bound to interpose the special statutes limiting the time for exhibiting claims and commencing actions against him, he was not bound to interpose the defence of the general statute of limitations in bar of the recovery of a demand otherwise well founded.    After discussing the question and citing authorities, *Parker*, C. J., says,—"If an executor or administrator should refuse or neglect to avail himself of the defence furnished by the statute provisions limiting actions against him (which were intended to secure the speedy settlement of estates), it would furnish a good reason for disallowing any sum he might have paid to satisfy the judgment recovered.    .   .   .    But the bar furnished by the general statute of limitations cannot be, of itself, a sufficient ground upon which to disallow the amount, if paid, or upon which to refuse a license for the sale of real estate, in order to make the payment, unless it is held (as in the case of the statutes just adverted to, limiting suits against executors and administrators) that the administrator is not at liberty to waive the benefit of the statute, and that it is waste in him to pay a demand, or to suffer a judgment and sale where he might interpose the defence of the general statute of limitations.    This we have seen, upon the authorities cited, cannot be done."    *Hodgdon* v. *White*, 11 N. H. 208, 216, 217.

In *Brown* v. *Anderson*, 13 Mass. 201, the distinction between the general statute of limitations and the special statutes limiting suits,—as to the power of an administrator to waive them,—is stated by the court as follows :  " The special statute of limitations was intended for the benefit of the estates of deceased persons, and of those interested in them, and not for the personal convenience of executors or administrators.    The general statute of limitations has always been considered as furnishing to debtors *prima facie* evidence of payment, and any counter evidence is admitted.    An acknowledgment of the debt, therefore, by an executor or administrator as well as by the original debtor, has been held to avoid that statute.    But the statute we are now considering (limiting suits) has no regard to the payment or non-payment of the debt; it was designed to produce a speedy settlement of estates, that the heirs might be quieted.    A promise of an administrator can, therefore, have no effect to bind the estate.    He may decline pleading the statute ; but if he does without consent of the heirs, he may expose himself for his unfaithful conduct.    The promise creates only a personal obligation on the person making it, but cannot affect the estate."

*Foster* v. *Starkey*, *Adm'r*, 12 Cush. 324, was an action by the promisee of a note against the administrator of the promissor, to which the statute of limitations was pleaded, and the question was upon the effect of a payment made by the defendant, the adminis-

trator. *Shaw*, C. J., says,—"The only remaining doubt, if there be room for doubt, seems to be, whether a payment by an administrator, after a right of action is barred by the general statute of limitations, is sufficient to avoid the bar. It must be considered that it is a very different question from that arising on the statute limiting the time for bringing an action against an executor or administrator, which stands on a very different footing. . . . Though it is sometimes said that an unqualified acknowledgment is evidence of a new promise, and a doubt might be suggested whether an administrator could bind the estate of his intestate by a new promise of his own, yet it is often spoken of and treated as a new and continuing promise, which continues and keeps the previously subsisting contract in force, and prevents the operation of the statute upon it. And the practice uniformly is to declare upon the original cause of action; and if the statute of limitations is set up as a bar, then the plaintiffs offer evidence of the payment, promise, or unequivocal acknowledgment of the debt, the effect of which is to avoid the bar, and the recovery is had on the original cause. Such being the effect of the payment or acknowledgment, there seems no reason why it should not have the same effect when made by the personal representative of the debtor, who has full knowledge of the affairs of the estate, and a full legal control and disposing power over the same, as if made by the debtor himself. It is equally proof that the debt is due and unpaid, and remains in force."

While it has been uniformly held in this state that an administrator cannot waive the special statutes limiting the time for exhibiting claims and bringing suits (*Judge of Probate* v. *Ellis*, 63 N. H. 366, *Clough* v. *McDaniel*, 58 N. H. 201, *Hall* v. *Woodman*, 49 N. H. 295), the doctrine that he may waive the general statute of limitations has been uniformly recognized. In *Badger* v. *Gilmore*, 33 N. H. 361, 371, *Hale* v. *Roberts* is cited as an authority that admissions by an administrator are competent to support a replication of a new promise to the intestate to a plea of the statute of limitations. In *Company* v. *Barnes*, 48 N. H. 25, it is held that when a suit is brought against an executor upon a debt due the deceased, more than three years after the granting of administration, he must plead in bar the special statute limiting suits, and that he is not at liberty to omit to plead the limitation of that statute, as he may the general statute of limitations when the debt is otherwise just. In *Brewster* v. *Brewster*, 52 N. H. 52, 60, *Foster*, J., says,—"It has been held in this state that an admission by an administrator of an existing debt of the intestate, which the administrator was liable and willing to pay, is competent and *prima facie* evidence of a new promise, and takes the claim out of the operation of the general statute of limitations, and part payment is universally recognized as such an admission. . . . But we find no case to the effect that such a recognition of liability,

either by the deceased debtor or his representatives, will avail against the statute, which, for the purpose of facilitating the speedy settlement of estates, requires that an action against the administrator shall be commenced within three years after the original grant of administration; and such a holding, it seems to us, would be contrary to the policy of the law." Although the soundness of the rule is questioned by *Sargent*, C. J., in *McLaughlin* v. *Newton*, 53 N. H. 531, 535, and in *Rockport* v. *Walden*, 54 N. H. 167, 173, the decisions of this court are to the effect that an administrator has the power, by a new promise, to waive the bar of the general statute of limitations in case of claims against the estate, subject to the limitation that the new promise cannot have the effect to extend the time within which the claim can be enforced beyond three years from the original grant of administration.    *Brewster* v. *Brewster*, 52 N. H. 52, 60.

The authorities cited sustain the position that an executor or administrator has power to waive the bar in cases where the statute has run against the debt in the lifetime of the debtor. We are not now called upon to affirm or to deny the soundness of the doctrine of these cases to that extent. The question here presented is, whether an executor or administrator can suspend the running of the general statute of limitations as to a claim against the estate, by a new promise made before the bar of the statute has attached; and we think it is settled upon principle and authority, that an executor or administrator has that power, subject to the limitation that the new promise cannot have the effect to waive the bar of the special statute limiting the time of bringing suits to three years from the original grant of administration.

The case finds that the plaintiff's note was duly presented within two years after the death of Franklin Munroe to his executor, F. O. Munroe, as a claim against the estate, and he promised that it should be paid. We understand this to be a finding that the promise was made by F. O. Munroe as executor, the effect of which was to take the plaintiff's claim out of the general statute of limitations until barred by the special three years statute. As this period had not elapsed, the plaintiff had a valid claim against the estate of Franklin Munroe when he was appointed administrator *de bonis non;* and there is no occasion to consider whether the general statute of limitations was suspended by reason of the executor's absence from the state, or by the statute prohibiting suit against the executor for one year after the grant of administration.

The appointment of the plaintiff as administrator of the estate of Franklin Munroe before his claim was barred, suspended his right of action against the estate, and operated as a suspension of the statute of limitations as to his personal claim. "The question of the statute does not arise where a legatee is also an executor of the testator, so that the same hand gives and receives. The same principle would seem to apply to a case where the executor is an

ordinary creditor of the testator, and as such is the rule where the debtor is administrator to the creditor, it would seem to hold good in the converse case. Notwithstanding the almost universal rule, that when time has once commenced to run in these cases, no alteration of circumstances in the way of any disability on the part of plaintiff or defendant will prevent it continuing to run, yet in cases where the debtor takes out administration to the creditor, time will not run in the debtor's favor, even though it has commenced to run previously to his administration. And it appears that where administration of the goods of a creditor is given to a debtor, this being done by act of law is not an extinction of the debt, but a suspension of the remedy." Wood Lim. of Actions 391, 392. "A debt due from the administrator to the estate shall be assets, and accounted for as other debts, . . . and the judge, after due notice, shall liquidate and adjust all debts and claims due to the administrator, or from him to the estate." G. L., *c.* 196 *s.* 10. As the statute does not run in favor of the administrator when he is a debtor to the estate, we see no reason why it should run against him when he is a creditor; and such in effect is the doctrine of *McLaughlin* v. *Newton*, 53 N. H. 531, where it is held that an administrator may present his private claim against the estate to the judge of probate, and have it allowed after the expiration of six years from the date of his appointment.

An administrator can maintain a bill in equity for the discovery of assets, and the recovery of property conveyed by the deceased in fraud of his creditors, so far as it is needed to pay the debts of the deceased. *Janvrin* v. *Curtis*, 63 N. H. 312. And the plaintiff, having an enforceable claim against the estate of Franklin Munroe, can proceed in equity for the recovery of property fraudulently conveyed by the deceased, unless his remedy is barred by the statute of limitations or lost through lack of reasonable diligence. These defences are set up in argument, but such defences cannot prevail where the relief sought is grounded on a charge of secret fraud, and it appears that the suit was commenced within a reasonable time after the evidence of the fraud was discovered. *Meader* v. *Norton*, 11 Wall. 442. The fraudulent transfer of the property, the concealment of the fraud by the deceased, and the fact that the plaintiff exercised due diligence in discovering the fraud and in commencing proceedings for the recovery of the property, are facts found by the referee. A mere general suspicion that there might be or ought to be property found somewhere which should be held as belonging to the estate of the deceased, cannot be held as matter of law sufficient to put the plaintiff upon inquiry, unless accompanied by facts and circumstances such as would reasonably lead to an investigation and discovery of the property fraudulently concealed. *Way* v. *Cutting*, 20 N. H. 187. Whether such facts and circumstances existed, and whether the plaintiff exercised reasonable diligence, were questions of fact

upon which the finding of the referee is conclusive.  *Alden* v.
*Gibson*, 63 N. H. 12, 13.

It is argued that the fraud which suspends the running of the
statute of limitations must be the fraud of the party proceeded
against, and that, as there is no evidence of fraud or fraudulent
concealment on the part of Mrs. Munroe, the bar of the statute
has attached, and her title cannot be questioned as to the personal
property.   This would be so if Mrs. Munroe had been a *bona fide*
purchaser for a valuable consideration and without notice; but
being a mere voluntary transfer of a title fraudulent as to credi-
tors, and having received the fruits of the fraud, she must be re-
garded as participating in the fraudulent concealment of the
grantor, so far as to prevent her taking advantage of it by inter-
posing the bar of the statute of limitations to defeat the plaintiff's
remedy against the property.   Where the purpose of the grantor
is shown to have been fraudulent as to creditors, it is sufficient to
prove that the grantee takes without consideration, without prov-
ing otherwise his participation in the fraudulent intent.    *Clark* v.
*Chamberlain*, 13 Allen 257; *Laughton* v. *Harden*, 68 Me. 208.
" The remedy which equity gives to the defrauded person is most
extensive.   It reaches all those who were actively concerned in
the fraud, all who directly and knowingly participated in the
fruits, and all those who derive title from them voluntarily or
with notice.   A court of equity will wrest property fraudulently
acquired, not only from the perpetrator of the fraud, but, to use
Lord *Cottenham's* language, from his children and his children's
children, or, as elsewhere said, from any persons amongst whom
he may have parcelled out the fruits of his fraud."    2 Pom. Eq.
Jur., *s.* 918; *Vane* v. *Vane*, *L. R.* 8 Ch. 383, 397; *Huguenin* v.
*Baseley*, 14 Ves. 273; *Bridgeman* v. *Green*, Wilmot 58.

The objection, that the report of the referee should be set aside
because of alleged misconduct of the plaintiff's counsel in arguing
that F. O. Munroe had forged the signature of Mary R. Munroe on
the stock certificates, is not sustained.   If otherwise well founded,
the objection was not seasonably made, as no exception was taken
at the time.   The portion of the argument objected to did not re-
late to matters outside of the evidence.   It consisted of comments
upon evidence legitimately in the case, as bearing upon the con-
duct and testimony of the witness, and the argument was replied
to, and the question of the genuineness of the signatures was dis-
cussed orally and subsequently in writing, by counsel upon both
sides.   The conduct and character of a witness, as shown by the
competent evidence in the case, like his appearance and manner
of testifying, are ordinarily legitimate matters of comment in
argument.

The stock-book of the Nashua Iron & Steel Company, being
required by law (G. L., *c.* 148, *s.* 10), was competent evidence on
the question of the transfer of stock; and the receipts given by

Franklin Munroe to the company were admissible to show that he had funds with which to make the payments on the share of stock issued in the name of Mary R. Munroe. If the evidence was material, no ground of objection is suggested, and none occurs to us, to the testimony of the plaintiff that he had searched the records of deeds of Suffolk county, Massachusetts, and found no conveyance there recorded by Mary R. Munroe, except one dated September 19, 1828, or to the admissibility of the will of Thomas Munroe. The deposition of Jackson was competent. Evidence of the state of the dealings between Jackson & McKean and Franklin Munroe, when they sued him in 1868, was material. The day-book being lost, the ledger entries were admissible. The ledger being beyond the jurisdiction of the court, secondary evidence of the entries was admissible, which, supplemented by the testimony of McKean, the book-keeper, was competent to show the state of the accounts.

The transfer of the property to Mrs. Munroe, although fraudulent as to creditors, was not absolutely void. Her title remains valid until avoided by creditors, and her executor is not chargeable with the rents and income. *Jones* v. *Bryant*, 13 N. H. 53. When her title is defeated, the creditors take the property as though she had never had any title to it, subject only to the claims and liens of *bona fide* purchasers for a valuable consideration, and without notice.

The appeal by the executor of the will of Mary R. Munroe from the decree of the judge of probate removing Lund as commissioner on the estate of Mary R. Munroe is not sustained. A creditor of an insolvent estate is disqualified to act as commissioner on the estate by reason of his pecuniary interest. And the fact that his claim is supposed to be fully secured does not remove the disability. The security may fail or depreciate in value, or the validity of his claim may be questioned, and the possibility of such a contingency is sufficient to disqualify him on the ground of interest.

The plaintiff is entitled to have one share of stock in the Nashua Iron & Steel Company, the $1,000 note of the Nashua Lock Company, and the homestead place, subject to the $2,200 Lund mortgage, or so much thereof as may be necessary, applied in satisfaction of his debt against the estate of Franklin Munroe, and there should be a decree for the plaintiff in the bill in equity. In the several appeal cases, the appeals should be dismissed and the decrees of the probate court affirmed.

*Case discharged.*

SMITH, J., did not sit: the others concurred.