Cheshire, }
June 6, 1911. }

### JAFFREY v. SMITH, *Ex'r.*

### SMITH, *Ex'r, v.* JAFFREY & *a.*

The re-enactment of a statute is deemed to be a legislative adoption of judicial decisions involving it only so far as they assume to construe the act.

The assessment of a tax may be proved by an unsigned record thereof which is shown to have been made by the selectmen.

A supplemental assessment of taxes against one who has died since the original assessment is properly made in his name, constitutes a claim against his estate, and is subject to the laws governing such causes of action.

Where an executor, having received written notice of a tax against the testator with request for payment, replies with a denial of liability and a flat refusal to pay, he is estopped to thereafter assert the insufficiency of the demand.

Where taxable estate is willfully concealed, the selectmen upon discovery of the fraud may make a supplemental assessment without notice to the owner, and set down a fourfold tax against him.

The fourfold tax which may be assessed when property is fraudulently omitted from an inventory constitutes a penalty and cannot be imposed after the taxpayer's death.

The validity of the action of selectmen in imposing a fourfold tax as a penalty for the concealment of property cannot be litigated in an action for the recovery of the tax, but must be determined in a direct proceeding instituted for that purpose.

A motion to amend the record of a tax assessment is not granted when it appears that the sole object of the amendment is to enable the town to collect a tax which its officers assessed illegally and refuse to abate.

ASSUMPSIT, in the first case, to recover a tax of $18,935.71 assessed against Maria R. Adams in Jaffrey for the year 1907. Facts found by the court.

Maria R. Adams died April 27, 1907. She had resided in Jaffrey, and on April 13 gave a sworn inventory of her taxable property to the selectmen. She gave in some real estate and $10,000 in personal property. Acting upon this, the selectmen assessed her tax at $238, which was paid June 12. May 16, the defendant was appointed her executor. He filed an inventory of her estate which was accepted by the probate court June 11, and which showed that she had taxable personal property to the amount of $255,888 more than she gave in for taxation. August 31, the selectmen sent the executor notice "that having found more property of Maria Adams, than she returned under oath, we shall proceed to tax the same according to law. Sections 15 and 16, chapter 57, of the Public Statutes of New Hampshire."

When the selectmen assessed the taxes in April, they made a record thereof in the Book of Polls and Ratable Property of the Town and signed the same at the end of the assessment. August 31, on the page following these signatures, they wrote: "The following property which was omitted by mistake has been added to the tax collector's book with warrant to collect the same." That part of the schedule which refers to the property of Maria R. Adams is as follows: "Resident, Maria R. Adams; value of stock in public funds, $25,300; money on hand, at interest, or on deposit, $230,588; total valuation, $255,888; reduced value, $127,944; total amount of taxes (4 times), $18,935.71." This assessment was not signed or dated. The record was introduced in evidence subject to exception.

The executor was notified of the tax in September, and in January, 1908, written notice and demand for payment was again sent to him by mail. To this he replied as follows: "Maria R. Adams died April 27, 1907, and I was appointed executor of her will May 16, 1907, and removed all her personal property liable to taxation to Peterborough, where I reside. June 11, 1907, I paid you as collector the tax of Maria R. Adams committed to you for collection, as assessed by the selectmen of Jaffrey for the year 1907, and hold your receipt for the same. Sept. 2, 1907, I received a notice from the selectmen of Jaffrey dated Aug. 31, 1907, stating that having found more property of Maria R. Adams than she returned under oath, they should proceed to tax the same according to law. Sept. 11, 1907, I received a notice from you as collector that the taxes assessed against Maria R. Adams in Jaffrey for the year 1907 was $18,975.71. Any assessment made by the selectmen of Jaffrey against Maria R. Adams on personal property after my appointment and the removal of the property from Jaffrey was illegal, and I shall not pay the tax. You can take any action in regard to the tax that you think best."

This action was begun in March, 1909. The questions whether upon the foregoing facts there was a legal assessment of the tax of $18,935.71, or any part thereof, and if so whether this action can be maintained, were transferred without ruling from the October term, 1909, of the superior court by *Wallace*, C. J.

*Charles H. Hersey, John E. Allen,* and *Leonard Wellington (Mr. Hersey* orally), for the plaintiff.

*Streeter, Hollis, Demond & Woodworth, Cain & Benton,* and *Ezra M. Smith (Mr. Hollis* orally), for the defendant.

PEASLEE, J. 1. The first objection raised to the maintenance of this suit is that the record introduced in evidence is insufficient and incompetent to prove the assessment of a tax, because the record was not signed by the selectmen. Authority for this proposition is found in the reasoning in *Perkins* v. *Langmaid,* 36 N. H. 501, where it is held that the "fair record" in the selectmen's book (P. S., c. 59, s. 5) is the assessment, and that there is no sufficient record without the signatures of the selectmen. This case was recognized as authority in *Paul* v. *Linscott,* 56 N. H. 347, but with evident doubt of its soundness, if taken literally. It is now said

that because these cases have construed the statute and the statute has since been re-enacted, the cases have been adopted by the legislature and are no longer subject to judicial reversal, even if they are unsound.    This is true only so far as a case assumes to construe the statute.    So far as it considers and decides general legal propositions, it stands as others do, even though portions of the same opinion construe a statute.    So here, the discussion and decision of what constitutes the essence of the assessment seems to be the consideration of a broad legal proposition, rather than a defining of that word as used in this particular statute.

The view that the record is the assessment, in the sense that it is the essence of the judicial act of fixing the amount of the tax, is not the law in this state.    The statute "requires the selectmen to assess the polls and estates their just and equal proportion, to make a list of such assessments, and commit it, with their warrant, to the collector.    The subsequent proceedings, such as recording the invoice and assessment in their own book, and causing them to be recorded by the town clerk, are for the purpose of preserving the memory and making a publication of their doings.    The omission of any or all of them cannot vitiate the assessment, or vacate the warrant which has already gone forth for the collection of the taxes. These things they are required to do, and to do seasonably, that people may inspect the records when made, and not that there may be a valid assessment, or that an assessment already made and committed for collection may remain good."    *Smith* v. *Bradley,* 20 N. H. 117, 120.    "A taxpayer's liability to contribute his share of the common burden, judicially ascertained by a court of special and limited jurisdiction, declared in a judgment called an assessment, and enforced by an execution called a warrant, is not created by the assessment."    *Boody* v. *Watson,* 64 N. H. 162, 167.    The mere making up the record is a ministerial act; while hearing and weighing evidence, applying the law, and reaching a conclusion are of a judicial nature.    *Barhyte* v. *Shepherd,* 35 N. Y. 238, approved in *Boody* v. *Watson, supra.*

An assessment is a judgment, but the record is no more the vital thing than is the recorded judgment of any other court. It would be a strange anomaly if the rule were more strict as to the records of these lay tribunals than in the case of courts composed of trained lawyers, officered by clerks whose special work is keeping correct and formal memorials of court proceedings.    In the case of courts, mere docket entries are sufficient data for a judgment.

If suit is brought on that judgment, and the defendant pleads. *nul tiel record*, the extended and formal record may then be made up and signed, and the defendant's plea goes for nothing. *Willard* v. *Harvey*, 24 N. H. 344. This is but a circumlocutory way of hold-ing that a formal and attested record is not essential to the validity of a judgment. The record should be made, and when made affords. conclusive evidence of what was adjudged. If it is not made, the plaintiff may fail because he cannot produce any proof of what was done; but when (as in this case) the proof is forthcoming, the fact of the adjudication is legally established. *State* v. *Cox*, 69 N. H. 246. The amendment or extension of the record ordered and made in *Willard* v. *Harvey* added nothing of substance to the proof of the judgment theretofore presented. Upon satisfactory evidence the court found that a judgment had been rendered: That was all that was essential in that suit and all that could affect the result. The extended record then made was valuable merely as formal proof for the future of what had already been proved in the case by a less esteemed class of evidence. Other authorities tending to support 'the conclusion here reached are: *Caouette* v. *Young*, 67 N. H. 159; *Hall* v. *Manchester*, 40 N. H. 410; *Little* v. *Downing*, 37 N. H. 355, 364; *Ferguson* v. *Clifford*, 37 N. H. 86, 95; 3 Wig. Ev., s. 2159.

It is found as a fact that the selectmen made the assessment. and entered in their record book the unsigned memorial of their transaction. No reason having been suggested why the judicial acts of selectmen should be evidenced by a more perfect record than those of a court, the proof must be considered sufficient. No logic can make it appear that the latter are sufficient wherein the former would be fatally defective. If the records are amendable on proof, there seems to be no sufficient reason why they are not. provable without amendment. *State* v. *Cox*, *supra*. If, however, the defendant insists upon a formal record, the superior court can order that the record be amended by adding the signatures of the selectmen, and this order will be recorded in the books of the select-men and town clerk. This course is not the creation of a new cause of action after suit was begun. It is a mere matter of evidence. The opposite conclusion can be reached only by putting the memorial in the place of the chronicled event.

2. Another defence made is that there was no demand upon the executor before the suit was brought. All taxes being assessed as of April 1 (P. S., c. 57, s. 1), this assessment relates back to that

date, and was properly made in the name of the taxpayer who died after April 1 and before the assessment was made. It was therefore a claim against her estate and subject to the provisions of law governing such causes of action. There was here a sufficient presentment, but no such demand as the statute prescribes. *Judge of Probate* v. *Runnells,* 66 N. H. 271; *Strafford Savings Bank* v. *Church,* 69 N. H. 582. The plaintiff's answer to this situation is that the acts of the executor made a demand unnecessary. To the written presentation of the claim with a request for payment, he replied with a denial of all liability and a flat refusal to pay at that or any other time. His statement that "I shall not pay the tax" is as broad and definite and final as it well could be. Having done this, he cannot in reason be heard to say that the plaintiff should thereafter have made the bootless journey to Peterborough, to go through the idle ceremony of being present to receive a payment he had positively refused to make. It would require very explicit language to prove that the legislature intended such a result. No such language has been used. The requirement is simply that a demand must be made. R. S., *c.* 161, *s.* 1; P. S., *c.* 191, *s.* 1. By judicial construction, this has been held to mean a personal demand, because the reason for it was to give the executor an opportunity to discharge the estate by immediate payment. The reason is not a weighty one, but it seems to be the only one supposable for the insertion and retention of this provision in the statute.

The companion provision for exhibition of the claim is a statute of limitations, calculated to promote the speedy settlement of estates. For this reason it has been said that it could not be waived in such a way as to extend the time during which estates might be kept open. *Preston* v. *Cutter,* 64 N. H. 461, and cases cited. But this does not mean that the executor may not so conduct himself during the time allowed for the exhibition of the claim that he will thereafter be estopped to deny the sufficiency of the exhibition. "The plaintiff was evidently led to understand, from the defendant's promise to pay, that a more formal presentment was not desired. If a more formal presentment would otherwise have been necessary, the defendant is estopped to deny it." *Ayer* v. *Chadwick,* 66 N. H. 385, 386. And objections to the form in which the claim is presented are waived unless taken at the time. *Ross* v. *Knox,* 71 N. H. 249. If this is the rule as to the somewhat strictly enforced provision for an exhibition, which informs the

executor of the condition of the estate and helps to promote its speedy settlement, much more must it be as to the requirement of a demand, which may be made as long as suit can be brought (*Cummings* v. *Farnham*, 75 N. H. 135), and whose sole office is to enable the executor to conveniently pay the claim before being subjected to costs of suit. In determining the legislative intent in the use of this word, recourse has heretofore been had to its definition when used in other connections. *Judge of Probate* v. *Runnells*, 66 N. H. 271. Investigating the question in this way, it is conclusively shown that a demand which is insufficient in itself may be made ample by the conduct of the person upon whom it is made. *Pattee* v. *Gilmore*, 18 N. H. 460; *Clough* v. *Ray*, 20 N. H. 558; *Abbott* v. *Strafford*, 51 N. H. 148. As was pointed out in *Pattee* v. *Gilmore*, the defendant was not bound to seek out the plaintiff when he received the letter; and if he had taken no notice of it, no liability would have been imposed on him. But he treated it as a demand and denied all liability. "That denial dispensed with the necessity of another demand, for after this it would have been useless to make a demand at any place." *Ib.* 463. This seems to be the only reasonable deduction from the conduct of the parties. No reason appears why it does not apply to the conduct of executors. If it is their duty, having sufficient funds, to admit all debts that are indisputable "and pay them without useless expense or delay, instead of forcing creditors through the idle ceremony of suit and judgment" (*Judge of Probate* v. *Ellis*, 63 N. H. 365, 366), it certainly is not an abuse of their power to inform a distant claimant that the claim he presents will not be paid, thereby saving him the "idle ceremony" of a presentment in person to make a fruitless demand. It was in accordance with this reasonable view of legal and business relations that this defendant acted. Believing that the estate was not liable for the tax, he so notified the plaintiff, stating in direct terms that he should not pay. It is not for him to now say that he did not expect to be taken at his word. He is estopped to deny that the tax was sufficiently demanded of him.

3. The tax was assessed without notice. If, as the defendant claims, the assessment were under section 9, chapter 59, Public Statutes, this might be fatal to the proceeding. But the tax was not so assessed. That statute was enacted to make provision for supplemental assessments in cases where the selectmen through inadvertence or mistake had omitted taxable property from their

invoice, or set it down to a person not liable to be taxed for it (*Boody* v. *Watson*, 64 N. H. 162, 195, 196), and has nothing to do with cases of willful concealment of property by the taxpayer.    This is provided for in another statute.    "If any person or corporation shall willfully omit to make and return such inventory or to answer any interrogatory therein contained, or shall make any false statement therein, or if the selectmen or assessors shall be of opinion that the inventory returned does not contain a full and correct statement of the property for which the person or corporation is taxable, or that the person making the same has willfully omitted to give the required information, or has made false answers or statements therein, the selectmen or assessors shall ascertain, in such way as they may be able, and as nearly as practicable, the amount and value of the property for which the person or corporation is taxable, and shall set down to such person or corporation, by way of doomage, four times as much as such property would be taxable if truly returned and inventoried."    P. S., *c.* 57, *s.* 15.

These provisions are merely a revision and consolidation of old statutes pertaining to the same subject; but the defendant says they apply only to making an original assessment, when the taxpayer fails to return an inventory, or returns one which in the opinion of the selectmen does not contain a full and correct statement of his taxable property, and that they in no way contemplate the making of a supplemental assessment, where the taxpayer has willfully concealed a portion of his taxable property and the fraud is not discovered until after completion of the original assessment. An examination of the early statutes on the subject discloses that the consolidated statute confers authority to make supplemental as well as original assessments.    The doomage law (for failing to return an inventory) and the fourfolding law (for returning a false inventory) were kept separate and distinct until 1878.    The added assessment under the latter provision was to be made "upon the discovery of the fraud."    Laws, *ed.* 1792, *p.* 184; R. S., *c.* 41, *s.* 6.    In the next revision the provision that the assessment should be made "upon the discovery of the fraud" was omitted (G. S., *c.* 51, *s.* 6), but no change in the meaning of the statute was intended. Comm'rs' Rep. G. S., *c.* 52, *s.* 6.    In 1878, the legislature consolidated the doomage and fourfolding provisions in substantially their present form.    Laws 1878, *c.* 69, *s.* 4.    The contention is that by this consolidation the effective punishment for a well devised fraud was taken away.    Unless it was discovered before the regular annual

assessment was completed, the perpetrator had escaped. He could then only be assessed the single tax, under section 9, chapter 59, Public Statutes. This contention cannot be sustained. There is no evidence of a legislative purpose in 1878 to make the evasion of taxation easier than it had been. An analysis of the present statute (P. S., c. 57, ss. 14, 15) leads to the conclusion that there has been no repeal of the power to assess upon discovery of the fraud. These sections were not drawn with any regard to logical order or sequence, but when so arranged the following is deducible from them:

(1) If a taxpayer shall willfully omit to make and return the required inventory, the selectmen or assessors shall ascertain in such way as they may be able, and as nearly as practicable, the amount and value of the property for which he is taxable, and shall set down to him by way of doomage four times as much as such property would be taxable if truly returned and inventoried (s. 15).

(2) If an inventory is returned, the selectmen or assessors shall assess a tax in accordance with their appraisal of the property therein mentioned, if they are of the opinion that it contains a full and true statement of the property for which he is taxable (s. 14).

(3) If an inventory is returned, but the selectmen or assessors are of the opinion that it does not contain a full and correct statement of the property for which he is taxable, or that in making the same he has wilfully omitted to give the required information, or that he has made false answers or statements therein, the selectmen or assessors shall proceed as where no inventory is returned (s. 15).

(4) If an inventory has been returned, and the selectmen or assessors upon receiving it were of the opinion that it contained a full and correct statement of the property for which the person was taxable, and assessed a tax upon the property returned as provided in section 14, but the person has willfully made a false return therein, the selectmen or assessors shall, upon discovery of the fraud, ascertain in such way as they may be able and as nearly as practicable the amount and value of the property concealed for which such person is taxable, and shall set down the fourfold tax (s. 15).

4. The provision for fourfolding the tax upon discovery of the fraudulent omission of property from the inventory returned imposes a penalty. It is so designated in the margin of the early editions of the statutes (Laws, ed. 1792, p. 184; Laws, ed. 1805, p. 215; R. S., c. 41; C. S., c. 43; G. S., c. 51, s. 6) and in the decided

cases. *Perry's Petition*, 16 N. H. 44; *Perley* v. *Parker*, 20 N. H. 263. The suggestion that it could be called a mere method of determining the taxpayer's share, consented to by him, as in the case of a failure to return any inventory (*Edes* v. *Boardman*, 58 N. H. 580, 594, 595), cannot be adopted. In this case the taxpayer attempts to avoid the payment of a part of his share by means of a false inventory. The penalty imposed upon the discovery of his fraud is no more with his consent than is the penalty imposed upon any other violator of the law. Being a penalty, it did not survive the death of the person taxed. P. S., c. 191, s. 14. After her death, it was the duty of the selectmen to assess the single tax only. There being no evidence of a legislative intent that the remedy provided should abate by death of the party, except so far as it was penal in its character, the selectmen acted legally in proceeding under the statute relating to delinquent taxpayers.

But the question of the validity of the action imposing the penalty cannot be litigated here. The selectmen had jurisdiction of the party by her residence in town on April 1. The proceeding is the assessment of 1907. Jurisdiction having been obtained, it was not lost by the death of a party *pendente lite*, so as to make the judgment thereafter rendered void. The erroneous decision that the penalty might still be enforced was merely the passing upon a question of law presented in the regular course of matters within the selectmen's jurisdiction. Their judgment, based on that decision, is not open to collateral attack. *Clifford* v. *Plumer*, 45 N. H. 269; *Fowler* v. *Brooks*, 64 N. H. 423; *Wilson* v. *Otis*, 71 N. H. 483; Freem. Judg., s. 140.

One defect in the reasoning leading to the conclusion that the assessment is void rather than voidable is the assumption that the action taken in August was a proceeding *de novo*. It was a part of the assessment of the tax for that year. It was no more a new proceeding, requiring notice, than was the ordinary assessment which was made some weeks earlier than this and some weeks after April 1. Both relate to and take effect as of that date. Jurisdiction then obtained supports both parts of the judgment alike. When the first tax was assessed against Maria Adams, the proceeding might or might not be at an end. Unless she had committed a fraud, that was the end of the case. If she had done so, there were to be further proceedings and an added assessment. The fraud having been discovered, it was the duty of the selectmen to act under the statute. Their error in deciding that the fourfolding

provision survived Maria Adams' death was an error of law, committed in the course of the performance of their duty in a case where they had jurisdiction. Such an error can be reached only by a direct proceeding. *Canaan* v. *District,* 74 N. H. 8; *Rowe* v. *Hampton,* 75 N. H. 479; *White* v. *Morse,* 139 Mass. 162; *Sennott's Case,* 146 Mass. 489.

Nor is it true that the defendant is without other remedy He may even now apply to the selectmen of Jaffrey for an abatement of the wrongfully assessed penalty. P. S., *c. 59, s.* 10. It has been suggested in argument that Maria Adams may not have owned the property on account of which this tax was assessed on April 1. The fact that she owned it April 27 is evidence that she did on April 1. If, however, the executor can show that this is not the truth of the case, he will have opportunity to do so upon his petition to the selectmen for abatement, and thereby obtain further relief.

*Case discharged.*

All concurred.

After the foregoing opinion was filed in *Jaffrey* v. *Smith,* on June 7, 1910, the defendant moved for a rehearing He also applied to the selectmen of Jaffrey for an abatement of the penalty. The abatement was refused, the reason assigned being laches in applying to the selectmen and that Maria R. Adams had cheated the town out of its just taxes in past years. Thereupon the executor filed a petition in the superior court for a review of alleged errors of law in the action of the selectmen, which is the second action. A demurrer to the petition was transferred without ruling from the October term, 1910, of the superior court by *Mitchell,* J., and was heard in connection with the motion for a rehearing.

*Streeter, Demond & Woodworth, Allen Hollis,* and *Cain & Benton* (*Mr. Hollis* orally), for the executor.

*Charles H. Hersey* and *John E. Allen* (*Mr. Hersey* orally), for the town and selectmen.

PEASLEE, J. It will not be necessary to now consider whether the executor has lost all right to have the erroneous assessment corrected by any form of abatement proceedings. He now insists, as the former opinion suggested he might, upon a more complete record of the original assessment. This necessitates the procure-

ment of an amendment to the record by the town. While under ordinary circumstances such amendment would be ordered as a matter of course, yet that is not always the case. "Generally, amendments are not allowed to affect the vested rights of third parties, or where injustice will be done to any one. *Chamberlain* v. *Crane*, 4 N. H. 115; *Goodwin* v. *Smith*, 4 N. H. 29; *Bowman* v. *Stark*, 6 N. H. 459; *Smith* v. *Moore*, 17 N. H. 380; *Wendell* v. *Mugridge*, 19 N. H. 109; *Baker* v. *Davis*, 22 N. H. 27. No reason has been assigned, and none is perceived, for exempting towns from the operation of the general rule." *Sawyer* v. *Railroad*, 62 N. H. 135, 156. The effect of this amendment, if allowed without limitation, would be to aid the town in its present effort to collect a penalty which it has been determined was unlawfully assessed, and which the selectmen refuse to abate. That the abatement would be ordered if the question came before this court is not open to doubt. Upon these facts but one conclusion can be arrived at. An amendment in aid of such a proceeding must be refused.

On the other hand, an entire refusal to correct the assessment record would enable the executor to escape the payment of the original tax. Justice, then, plainly requires such an order as will compel the payment of the tax and relieve from the payment of the penalty. Whether that order be in the positive form—making the amendment upon the town's filing a release of its claim for the penalty—or in the negative form of refusing the amendment upon the payment by the executor of the single tax, with interest at the statutory rate and costs, seems immaterial.

While the question whether an amendment shall be allowed is usually one of fact for the superior court, yet the question whether it can be allowed is one of law. *Sawyer* v. *Railroad*, 62 N. H. 135, 159. There is no room for a difference of opinion here, and consequently nothing for the superior court to pass upon.

The executor is ready to pay the single tax, and wishes to do so at once to escape further liability for a high rate of interest. The superior court for Cheshire county is not now in session; and in view of the course pursued by the town's prudential officers when acting on this matter in their judicial capacity, justice appears to require that an order for judgment be now entered. Because of this situation, judgment is now ordered for the town, as of June 6, 1911, for $6,400.26. In *Smith* v. *Jaffrey* the order is,

*Petition dismissed.*

All concurred.